CALAVERAS TIMBER CO. v. MICHIGAN TRUST CO.

1. MORTGAGES—FORECLOSURE—FRAUD.
   Supreme Court will not, in the absence of fraud or irregularity, interfere with a statutory foreclosure of a trust mortgage.

2. SAME—FORECLOSURE—CONSTRUCTIVE FRAUD—BONDHOLDERS' PROTECTIVE COMMITTEE—TRUSTS.
   Fact that personnel of bondholders' protective committee consisted of officers, directors and stockholders of the two corporate trustees under a trust mortgage, clients of long standing of counsel for one of such trustees and son of director and large stockholder therein *held*, insufficient upon which to base or construct fraud justifying injunction restraining foreclosure of the trust mortgage under power of sale therein, where such committee's actions as were complained of were ratified by majority of bondholders.

3. SAME—TRUSTS—BREACH OF FIDUCIARY RELATION—CONSTRUCTIVE FRAUD.

Under trust mortgage empowering trustees to acquire, sell, deal in and own bonds issued thereunder with the same rights they would have were they not trustees, their voting, as bondholders either as owners or fiduciaries in approval of proceeding under power of sale clause to foreclose, without which vote there was an insufficient amount of bonds voted to sustain a majority *held*, not a breach of the fiduciary responsibilities constituting a constructive fraud warranting injunction as to foreclosure.

4. SAME—FORECLOSURE—TRUSTS—FRAUD.

Holding of foreclosure sale under power contained in trust mortgage in lieu of judicial foreclosure and trustees' failure to oppose such method of foreclosure *held*, not to constitute a fraud upon the mortgagor in its suit to enjoin foreclosure.

5. SAME—FORECLOSURE—TRUSTS—EQUITY—INJUNCTION.

Fact that harsh results may flow from foreclosure sale held under power contained in trust deed because of lack of competitive bidding during depression *held*, insufficient basis for enjoining such foreclosure in absence of fraud or other irregularity.

6. SAME—TRUSTS—TRUSTEE'S COMMISSIONS ON SALE OF SECURITIES TO TRUST.

Corporate trustee which purchased municipal bonds through itself for investment in trust fund held by it and required to be set up by trust deed *held*, accountable to mortgagor for secret profits by way of commissions charged thereon as well as commission obtained from sale to cotrustee managing other half of such fund notwithstanding purchases of such bonds were made either at the direction or with the ratification of the mortgagor.

7. SAME — TRUSTS — ACCOUNTING — LOSSES THROUGH DECLINE IN VALUES OF INVESTED SECURITIES—ESTOPPEL.

In suit to enjoin foreclosure sale, for an injunction and an accounting brought by corporate mortgagor and representatives of estate of deceased guarantor of bonds secured by trust mortgage which set up fund for payment of taxes and interest *held*, not entitled to recoup from trustees under mortgage losses sustained through decline in value of securities invested in such fund where mortgagor directed or approved each purchase and subsequent sale as made by defendant trustees.

Appeal from Manistee; Neal (Max E.), J. Submitted October 8, 1936. (Docket No. 47, Calendar No. 39,097.) Decided December 28, 1936.

Bill by Calaveras Timber Company, a Michigan corporation, and Ewald J. Pfeiffer and Charles McPherson, as executors and trustees of the will of Charles F. Ruggles, deceased, against the Michigan Trust Company, Detroit Trust Company and George C. Thomson, as trustees, to enjoin the foreclosure of a trust mortgage by statutory sale, for an accounting and other relief. Michigan Public Trust Commission intervened as a party defendant. From decree rendered, all parties appeal. Modified and affirmed.

*Norris, McPherson, Harrington & Waer,* for plaintiffs.

*Butterfield, Keeney & Amberg* and *Miller, Canfield, Paddock & Stone,* for defendants.

*David H. Crowley,* Attorney General, and *Edmund E. Shepherd,* Assistant Attorney General, for intervener.

Toy, J. On May 1, 1928, the plaintiff, Calaveras Timber Company, a Michigan corporation (hereinafter for convenience of expression called the timber company), executed and delivered to the Michigan Trust Company, the Detroit Trust Company and George C. Thomson, defendants herein, as trustees, a mortgage upon several thousand acres of timber land owned by the timber company in Calaveras county, California, for the purpose of securing its issue of bonds in the original principal sum of $2,217,000. Of these bonds there are now outstand-

ing and unpaid the principal sum of $2,174,800. With interest added, the mortgage debt, at the time of decision below, exceeded the sum of $2,700,000. There is an annual interest charge of approximately $130,000. The taxes have been paid up to and including April, 1935. The mortgagor defaulted in the payment of interest due November 1, 1932, and subsequently; and such default continues.

The principal and interest of the bonds were unconditionally guaranteed by Charles F. Ruggles, now deceased, and John H. Rademaker. A claim against the Ruggles estate, based upon this guaranty, was filed by the trustees and allowed as absolute, with the condition that payment of any of the bonds or interest coupons by the timber company would operate to discharge the claim *pro tanto*. All of the capital stock of the timber company, except qualifying shares, is held by plaintiffs McPherson and Pfeiffer as trustees under the Ruggles will.

Article 7, § 4 of the trust indenture contains the following provision:

"In case an event of default * * * shall occur, the trustees, in their discretion, may, and upon being requested in writing by the holders of a majority in amount of the bonds then outstanding, and upon being indemnified to their satisfaction against costs and expenses which may be incurred by acting in pursuance of such request, shall, either after entry, as hereinbefore provided, or without such entry, proceed by legal process to enforce payment of the principal and interest due and owing upon the said bonds, and to foreclose this indenture and to sell the lands, timber and property hereby conveyed, under the judgment or decree of a court or courts of competent jurisdiction."

Section 5 of the same article contained in the indenture provides:

"In case an event of default * * * shall occur, it shall be lawful for the trustees, upon receiving a request from the holders of the majority in amount of the bonds hereby secured and then outstanding, with or without exercising the power of entry herein provided for, to sell and dispose of all and singular the premises, property and assets included in this indenture, or intended so to be, or such portion thereof as the trustees may deem necessary, at public auction, under the provisions of the statutes of the State of California in such case made and provided, upon such terms as to credit, partial credit, or security for payment, as they may think proper or expedient, having first given public notice of the time and place of the sale, by advertisement as required by law in the case of foreclosure of mortgages upon real estate, and no other notice whatever to the said mortgagor shall be necessary."

The section additionally provides that such sale, when made, shall be a perpetual bar both at law and in equity against the mortgagor.

After notice of foreclosure, under the power of sale contained in section 5 had been given, this suit was commenced, seeking: to enjoin the trustees from exercising the power of sale provision of the trust indenture; an accounting of certain trust funds deposited with the trustee trust companies, wherein it is claimed that the trust companies made secret profits to themselves out of the trust funds; the removal of the mortgage trustees; and other relief unnecessary to be here related.

Trial was had below, followed by the decree of the chancellor enjoining the trustees from exercising the power of sale contained in the trust indenture and requiring the defendant, Detroit Trust Company, to account for and pay over to the trust fund the sum of approximately $2,200, for profits which

it secured in the sale of bonds to the trust fund. From the decree entered all parties hereto appeal.

The first question presented is whether we should enjoin the defendant trustees from foreclosing the mortgage under the power of sale contained therein.

Section 5, article 7 of the mortgage, hereinbefore quoted, expressly provides for foreclosure by the exercise of the "power of sale" therein contained. This is in accord with the statutes of the State of California. California Civil Code, § 2932. We will not, in the absence of fraud or irregularity, interfere with a statutory foreclosure. *Moss* v. *Keary,* 231 Mich. 295; *Cameron* v. *Adams,* 31 Mich. 426; *Michigan Trust Co.* v. *Cody,* 264 Mich. 258; *Virginian Joint Stock Land Bank of Charleston* v. *Hudson,* 266 Mich. 644.

Is there here any proof of fraud which would justify an interference with such statutory foreclosure?

The trial judge held affirmatively. In his opinion he found:

"(a) That the manner in which the bondholders' committee was selected and appointed as well as its personnel;

"(b) That the action of the trustees in voting the bonds held and deposited by them in approval of the choice of foreclosure under the power of sale and as authorizing and approving the organization of the committee;

"(c) That attempting to hold a sale under the power in lieu of judicial foreclosure;

"(d) That failure to oppose the sale under the power when the right, being permissive, could not have been compelled;

"(e) That allowing the same counsel to represent the trustees and the bondholders' committee;

"(f) That in using the bonds owned and deposited by the trustee to constitute a majority of the bondholders in furtherance of the procedure adopted, and

"(g) In failing to divorce their interest as bondholders from their duties and obligations as trustees constitutes constructive fraud upon the mortgagor justifying the interference of this court in permanently restraining the defendant trustees from proceeding with the foreclosure of the mortgage indenture under the power of sale."

We shall proceed to analyze the record as it appears to us, using for reference, in our discussion, the opinion of the trial judge, as hereinbefore quoted, with its respective letter indices (a to g).

(a). The selection of the bondholders' protective committee and its personnel.

The trial court in his opinion said of this phase of the matter:

"This committee is composed of men of standing in their respective communities, all of whom are versed in business and financial matters and some of whom are also experienced in one or more phases of the timber business. The record discloses, however, that these men were affiliated with the two trust companies either as officers, directors or stockholders, or by close financial or fiduciary relations. Three are clients of long standing of counsel for one of the corporate trustees, and the father of one is a director and large stockholder therein. * * * The bondholders' protective committee is competent in personnel, but its function is to speak for and represent the bondholders."

Assuming, but not deciding, that the finding of the trial judge as above outlined, is correct, yet we find such determination to be of little, if any value upon

which to base or construct fraud, for every action taken by the bondholders' committee, of which complaint is made, was later ratified by a majority of the bondholders.

(b), (f) and (g). The action of the trustees in voting bonds held, owned and deposited by them, in approving foreclosure under the power of sale contained in the mortgage, where such bonds constituted the balance of voting power.

The bonds outstanding on November 20, 1935 (the day of the bondholders' meeting), were $2,174,800 in amount. Of these, the defendant trustees had deposits of $274,200, in par value thereof, held either by the trustees as owners or in their fiduciary capacity. At the meeting, when voting approval of the acts of the trustees in proceeding under the "power of sale" clause of the mortgage, the trustees voted the bonds held by them affirmatively for ratification of such determined method of foreclosure. Without such voting by the trustees, there was an insufficient amount of the bonds voted to sustain a majority.

It is strongly urged by plaintiffs, and determined by the trial judge, that the voting of the aforementioned bonds by the trustees, under the circumstances, is a breach of the fiduciary responsibilities of defendants and constitutes fraud, at least constructively.

In this stand we cannot concur, for again we find that the point in controversy has been determined by the trust indenture itself. There is contained in article 9 thereof the following unambiguous provision:

"Section 14. The trustees, or any of them, may acquire, sell, deal in and own bonds and coupons issued hereunder, *with the same rights* which they,

he or it would have if not trustees or trustee here-under." (Italics ours.)

The action of the trustees in voting the bonds held by them was in accordance with this provision of the mortgage indenture. Such action having been contemplated and permitted by the agreement of the parties contained in the trust indenture, plain-tiffs (mortgagors) cannot now be heard to say that such conduct is a fraud upon them. *Anderson* v. *Pennsylvania Hotel Co.* (C. C. A.), 56 Fed. (2d) 980; *In re Allied Owners Corp.* (C. C. A.), 74 Fed. (2d) 201 (97 A. L. R. 360); *Martin* v. *Rockford Trust Co.,* 281 Ill. App. 441.

Nor do we think that holding the sale under the "power" contained in the mortgage in lieu of ju-dicial foreclosure (c), nor the failure to oppose such method of foreclosure (d), constitutes a fraud upon the mortgagor, for, as we have hereinbefore pointed out, such action was permissible by the very terms of the mortgage contract. We find no proof in the record of acts by defendant trustees, which consti-tute fraud, either actual or constructive, upon the mortgagor or the bondholders.

Plaintiffs urge that because foreclosure under the power of sale clause of the mortgage will result in a sale at a time when, by reason of the financial depression, real competitive bidding cannot be ef-fected, and because such a foreclosure will result in a cutting off of any period of redemption and will result in the sale of the property without any upset price being fixed, and will result in the acquiring of the mortgaged premises by the depositing bond-holders at a price less than they could obtain it for under judicial foreclosure, that equity should enjoin such a foreclosure as inequitable.

Harsh results may and often do obtain because of mortgage foreclosure sales, but we have never held that because thereof, such sale should be enjoined, when no showing of fraud or irregularity is made. In *Smith* v. *Black,* 115 U. S. 308 (6 Sup. Ct. 50), the supreme court of the United States said: (p. 318)

"But the fact of depression in value is no ground in itself for not upholding a sale under the trust deed, nor is a subsequent rise in value a ground for setting aside the sale. Those who speculate in real estate on credit take the risk of depression in value at the time the credit expires, and those who buy for cash in time of depression are entitled to the benefit of a subsequent rise in value."

In *Michigan Trust Co.* v. *Dutmers,* 265 Mich. 651, we said:

"Neither should the burden of loss owing to depreciation of real estate values be borne by the mortgagee. *Michigan Trust Co.* v. *Cody,* 264 Mich. 258."

In *Brennan* v. *American Trust Co.,* 3 Cal. (2d) 635 (45 Pac. [2d] 207), the court said:

"Neither legislation nor judicial decision in this State warrants interference with the normal course of a sale under a deed of trust conducted in compliance with the law and without fraud."

The harsh consequences anticipated by plaintiffs, if they occur, will not result because of fraud upon the part of defendants, but rather from the terms of the mortgage indenture itself, which is the express agreement of the parties.

We find no reason to enjoin the intended foreclosure.

Plaintiffs seek an accounting from defendant trust companies for alleged secret profits made by them in the sale of securities and for alleged losses resulting from such transactions.

The mortgage provided that out of the proceeds of the sale of the timber company bonds there was to be deposited with the trust companies the sum of $733,590 which sum and the income therefrom was to be used for the payment of taxes assessed against the mortgaged premises and for the payment of interest upon the outstanding bonds. The indenture provided that such sum was to be divided equally between the two trust companies for such purpose. This was done. The indenture provided also that such funds were to be invested in "Liberty Bonds, U. S. Treasury Certificates, certificates of deposits, * * * or in such other investment securities as may be mutually agreed upon between the trust company and the mortgagor."

These stated funds were invested by the trust companies in high grade Michigan municipal bonds, most of which were purchased from or through the bond department of the defendant Detroit Trust Company, which company was at that time the largest dealer in Michigan municipal bonds. This trust company obtained commissions in amount over $2,000 on the sale of municipal bonds purchased for its one-half of the above stated fund and commissions in amount over $1,300 on bonds that it sold defendant Michigan Trust Company and which were paid for out of its one-half of such fund. Due to the depression and market decline some appreciable losses were sustained on the bonds so purchased as they were sold from time to time.

Plaintiffs seek an accounting of these profits obtained from the aforementioned commissions and

also for the losses resultant from the subsequent sale of these bonds at a decreased price.

The court below disallowed all of such claims of plaintiff excepting that for commissions obtained by the Detroit Trust Company in the sale of municipal bonds paid for from its one-half of the allotted fund. Both appellants and cross-appellants here allege such determination to be erroneous. Appellants claim that they are not liable for any amount and cross-appellants contend that they should have full accounting for all such profits as well as for resultant losses as hereinbefore outlined.

We are in accord with the determination of the trial court, holding defendant Detroit Trust Company liable for the profits derived from the sale of securities by itself to the trust fund in its possession and under its control as trustee.

While the purchases of the particular bonds were made either at the direction or with the ratification of the mortgagor, nevertheless the secret profits derived by the defendant Detroit Trust Company were not so authorized. It should therefore account for them. *Kelsey* v. *Detroit Trust Co.*, 265 Mich. 358; *In re Culhane's Estate,* 269 Mich. 68; *McNutt* v. *Dix,* 83 Mich. 328 (10 L. R. A. 660).

We find no merit in plaintiffs' claim for an accounting of the losses which accrued by reason of the decline in the values of the securities purchased for this tax and interest fund by defendant trust companies. The timber company either directed or approved each purchase and subsequent sale as they were made by the respective trust companies and therefore cannot now be heard to complain. *Lawrence* v. *First National Bank & Trust Co. of Kalamazoo,* 266 Mich. 199.

It is unnecessary to discuss the other points raised, for with the exception of the accounting of secret profits by the Detroit Trust Company, as decreed by the court below, we find no proven grounds for equitable relief. The decree entered below will be modified to accord herewith. Costs to defendants.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL and SHARPE, JJ., concurred. POTTER, J., did not sit.