RESIDENTIAL FUNDING CO, LCC v SAURMAN
BANK OF NEW YORK TRUST COMPANY v MESSNER

Docket Nos. 290248 and 291443. Submitted October 7, 2010, at Detroit.
    Decided April 21, 2011, at 9:00 a.m. Reversed, 490 Mich 909
    (2011).

   Gerald Saurman purchased real property, obtaining financing from
      Homecomings Financial, LLC. The financing transaction involved
      loan documentation (the note) and a mortgage security instru-
      ment (the mortgage instrument). The mortgage instrument pro-
      vided the mortgagee the right to foreclosure on the property in the
      event of a default on the loan. Homecomings, though named as the
      lender in the mortgage instrument, was not designated therein as
      the mortgagee. Instead, the mortgage instrument stated that
      Mortgage Electronic Registration Systems, Inc. (MERS), was the
      mortgagee, acting solely as a nominee for the lender and the
      lender's successors and assigns. It also stated that it secured to the
      lender the repayment of the loan and the performance of the
      borrower's covenants and agreements under the mortgage instru-
      ment and the note. The mortgage instrument further provided
      that MERS held only legal title to the interests granted by
      Saurman in the security instrument and that MERS (as the
      nominee for the lender and the lender's successors and assigns)
      had the right to exercise any or all of those interests, including, but
      not limited to, the right to foreclose and sell the property and to
      take any action required of the lender including releasing and
      canceling the security instrument. Saurman defaulted on his note.
      MERS began nonjudicial foreclosure by advertisement under MCL
      600.3201 et seq., purchased the property at the subsequent sher-
      iff's sale, and then quitclaimed the property to Residential Fund-
      ing Co, LLC, Homecomings' successor lender. Residential Funding
      began an eviction action in the 62-A District Court. Saurman
      challenged the foreclosure as invalid, asserting that MERS did not
      have the statutory authority to foreclose by advertisement under
      MCL 600.3204(1)(d) because MERS was not an owner of the
      indebtedness, an owner of an interest in the indebtedness secured
      by the mortgage, or the servicing agent of the mortgage as
      required under the statute. The district court, Steven M. Timmers,
      J., disagreed with Saurman and granted a judgment for possession

of the property in favor of Residential Funding. The Kent Circuit Court, George S. Buth, J., affirmed the judgment of the district court. The Court of Appeals granted Saurman's application for leave to appeal (Docket No. 290248).

Corey Messner purchased real property in the same manner as Gerald Saurman, obtaining financing from Homecomings. The same type of note and mortgage instrument were executed. Messner defaulted on his note, and MERS foreclosed by advertisement, purchased the property at the sheriff's sale, and quitclaimed the property to Bank of New York Trust Company, Homecomings' successor lendor. Bank of New York Trust Company began an eviction action in the 12th District Court. Messner challenged the foreclosure as invalid on the same grounds as asserted by Gerald Saurman. The district court, Michael J. Klaeren, J., disagreed and granted a judgment for possession of the property in favor of Bank of New York Trust Company. The Jackson Circuit Court, Chad C. Schmucker, J., affirmed the judgment of the district court. The Court of Appeals granted Messner's application for leave to appeal (Docket No. 291443) and consolidated the appeals.

The Court of Appeals *held*:

1. There was no dispute that MERS was neither the owner of the indebtedness nor the servicing agent of the mortgage, therefore, under MCL 600.3204(1)(d), MERS lacked authority to foreclose by advertisement unless it was the owner of an interest in the indebtedness secured by the mortgage.

2. Defendants' indebtedness was solely based on the notes because defendants owed monies pursuant to the terms of the notes. In order for a party to own an interest in the indebtedness secured by a mortgage, it must have a legal share, title, or right in the note. Even though they are typically employed together, the indebtedness, i.e., the note, and the mortgage are two different legal transactions providing two different sets of rights. There is no merit to plaintiffs' suggestion that an interest in the mortgage is sufficient under MCL 600.3204(1)(d).

3. MERS did not have the authority to foreclose by advertisement on defendants' properties. MERS, as the mortgagee, only held an interest in the properties as security for the notes, not an interest in the notes themselves. MERS's interest in the mortgages did not give it an interest in the notes. MERS had no financial interest in the notes. The fact that, in the mortgage instrument, Homecomings gave MERS authority to take any action required of the lender did not transform MERS into an owner of an interest in the notes. The mortgages expressly limit the interests MERS owns to those granted in the mortgage

instrument and limits MERS's right to take action to those actions related to the mortgage instrument. Nothing in the mortgage permits MERS to take action with respect to the debt, or provides it any interest therein. The Legislature has specifically required ownership of an interest in the note before permitting foreclosure by advertisement. Where the Legislature has limited the availability to take action to a specific group of individuals, parties cannot grant an entity that falls outside that group the authority to take such action. Although MERS owns the mortgage, it owns neither the related debt nor an interest in any portion of the debt, and is not a secondary beneficiary of the payment of the debt.

4. MCL 600.3204(1)(d) does not permit foreclosure by advertisement in the name of an agent or a nominee. Only servicing agents, not all agents, may foreclose by advertisement.

5. Because the risk of a double recovery only occurs when the mortgage holder and the noteholder are separate, the Legislature limited foreclosure by advertisement to those parties that were entitled to enforce the debt instrument, resulting in an automatic credit toward payment on the instrument in the event of foreclosure.

6. MERS's inability to comply with the requirements of MCL 600.3204(1)(d) rendered the foreclosure proceedings in both cases void *ab initio*. The circuit courts improperly affirmed the district court's decisions to proceed with eviction on the bases of the foreclosures of defendants' properties. The orders of the circuit courts are reversed, the foreclosure proceedings are vacated, and the cases are remanded for further proceedings.

Reversed, vacated, and remanded.

WILDER, P.J., dissenting, stated that MERS was the owner of an interest in the indebtedness secured by the mortgage in each case. As the mortgagee, MERS owned a contractual interest in the indebtedness. MERS's interest in the indebtedness is derived from the fact that its contractual obligations as mortgagee were dependent on whether the mortgagor met the obligation to pay the indebtedness that the mortgage secured. By conveying to MERS the right to take any action required of Homecomings, Homecomings gave, and MERS received, a greater interest than just an interest in the property as security for the note, namely it gave MERS the contractual right to act for the benefit of Homecomings. MERS was the contractual owner of an interest in the notes, which were secured by the mortgages. Nothing in MCL 600.3204 precludes a noteholder-mortgagee from delegating, by contract, some of its rights and responsibilities under the statute and the mortgage to a nominee that, while not the owner of the note and,

therefore, not the holder of an interest in the note identical to that of the noteholder, nevertheless, clearly has an interest in whether the note is paid or defaulted on. MERS did have the authority to foreclose on defendants' property by advertisement and the orders in each case should be affirmed.

1. MORTGAGES — FORECLOSURES BY ADVERTISEMENT — INTERESTS IN MORTGAGES — INTERESTS IN INDEBTEDNESS.

A party may foreclose a mortgage by advertisement if the party is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or is the servicing agent of the mortgage; an interest in a mortgage is different from an interest in the indebtedness because notes and mortgages are separate documents that provide evidence of separate obligations and interests; the Legislature limited foreclose by advertisement to those parties that are entitled to enforce the debt instrument, resulting in an automatic credit toward payment on the instrument in the event of foreclosure.

2. TRUSTS — TRUSTEES — OWNERSHIP INTERESTS IN TRUSTS.

A trustee authorized to take any action on behalf of the trust is not, as a result of such authority, given an ownership interest in the trust.

3. CONTRACTS — AUTHORITY TO TAKE ACTIONS.

Where the Legislature has limited the availability to take action to a specific group of individuals, parties cannot grant an entity that falls outside that group the authority to take such action.

*Orlans Associates, P.C.* (by *Timothy B. Myers*), for Residential Funding Co, LLC, and Bank of New York Trust Company.

*Tripp & Tagg, Attorneys at Law* (by *David H. Tripp*), for Gerald Saurman.

*Jackson Legal, PLLC* (by *Lysle G. Hall*), for Corey Messner.

Amici Curiae:

*Michigan Poverty Law Program* (by *Lorray S. C. Brown*) and *Legal Services of South Central Michigan*

(by *Robert F. Gillett*) for the Legal Services Association of Michigan, the Michigan Poverty Law Program, the State Bar of Michigan Consumer Law Section Council, and the National Consumer Law Center.

*Reinhart Boerner Van Deuren S.C.* (by *Robert S. Driscoll* and *J. Bushnell Nielsen*) for the American Land Title Association.

Before: WILDER, P.J., and SERVITTO and SHAPIRO, JJ.

SHAPIRO, J. These consolidated appeals each involve a foreclosure instituted by Mortgage Electronic Registration Systems, Inc. (MERS), the mortgagee in both cases. The sole question presented is whether MERS is an entity that qualifies under MCL 600.3204(1)(d) to foreclose by advertisement on the subject properties, or if it must instead seek to foreclose by judicial process. We hold that MERS does not meet the requirements of MCL 600.3204(1)(d) and, therefore, may not foreclose by advertisement.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In these cases, each defendant purchased property and obtained financing for their respective properties from a financial institution. The financing transactions involved loan documentation ("the note") and a mortgage security instrument (the "mortgage instrument"). The original lender in both cases was Homecomings Financial, LLC.

Each note stated, in part, the amount of the loan, the interest rate, methods and requirements of repayment, and the identity of the lender and the borrower. Each mortgage instrument provided the mortgagee the right to foreclosure on the property in the event of default on

the loan. The lender, though named as the lender in the mortgage instrument, was not designated therein as the mortgagee. Instead, the mortgage instrument stated that MERS "is the mortgagee under this Security Instrument" and it contained several provisions addressing the relationship between MERS and the lender, including:

> "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument.
>
> \* \* \*
>
> This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property . . . .
>
> . . . Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Defendants defaulted on their respective notes. Thereafter, MERS began nonjudicial foreclosures by advertisement as allegedly permitted under MCL 600.3201 *et seq.*, purchased the property at the subsequent sheriff's sales, and then quitclaimed the property

to plaintiffs as respective successor lenders. When plaintiffs subsequently began eviction actions, defendants challenged the respective foreclosures as invalid, asserting, *inter alia*, that MERS did not have authority under MCL 600.3204(1)(d) to foreclose by advertisement because it did not fall within any of the three categories of mortgagees permitted to do so under that statute. The district courts denied defendants' assertions that MERS lacked authority to foreclose by advertisement and their conclusions were affirmed by the respective circuit courts on appeal. We granted leave to appeal in both cases.[1]

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review de novo decisions made on motions for summary disposition,[2] *Coblentz v City of Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006), as well as a circuit court's affirmance of a district court's decision on a motion for summary disposition. *First of America Bank v Thompson*, 217 Mich App 581, 583; 552 NW2d 516 (1996). We review all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion, in this case, defendants. *Coblentz*, 475 Mich at 567-568.

---

[1] *Residential Funding Co LLC v Saurman*, unpublished order of the Court of Appeals, entered May 15, 2009 (Docket No. 290248); *Bank of New York Trust Co v Messner*, unpublished order of the Court of Appeals, entered July 29, 2009 (Docket No. 291443).

[2] In Docket No. 290248, the district court granted summary disposition under MCR 2.116(C)(10). In Docket No. 291443, the district court granted summary disposition under MCR 2.116(I)(2) ("If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party.").

We also review de novo questions of statutory interpretation and the proper application of statutes. *Id.* at 567.

> The primary goal of statutory interpretation is to give effect to the intent of the Legislature. This determination is accomplished by examining the plain language of the statute. Although a statute may contain separate provisions, it should be read as a consistent whole, if possible, with effect given to each provision. If the statutory language is unambiguous, appellate courts presume that the Legislature intended the meaning plainly expressed and further judicial construction is neither permitted nor required. Statutory language should be reasonably construed, keeping in mind the purpose of the statute. If reasonable minds could differ regarding the meaning of a statute, judicial construction is appropriate. When construing a statute, a court must look at the object of the statute in light of the harm it is designed to remedy and apply a reasonable construction that will best accomplish the purpose of the Legislature. [*ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 526-527; 672 NW2d 181 (2003) (citations omitted).]

### B. MERS BACKGROUND

The parties, in their briefs and at oral argument, explained that MERS was developed as a mechanism to provide for the faster and lower-cost buying and selling of mortgage debt. Apparently, over the last two decades, the buying and selling of loans backed by mortgages after their initial issuance had accelerated to the point that those operating in that market concluded that the statutory requirement that mortgage transfers be recorded was interfering with their ability to conduct sales as rapidly as the market demanded. By operating through MERS, these financial entities could buy and sell loans without having to record a mortgage transfer for each transaction because the named mortgagee

would never change; it would always be MERS even though the loans were changing hands. MERS would purportedly track the mortgage sales internally so as to know for which entity it was holding the mortgage at any given time and, if foreclosure was necessary, after foreclosing on the property, would quitclaim the property to whatever lender owned the loan at the time of foreclosure.

As described by the New York Court of Appeals in *MERSCORP, Inc v Romaine*, 8 NY3d 90, 96; 828 NYS2d 266; 861 NE2d 81(2006):

> In 1993, the MERS system was created by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages. Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system.

> The initial MERS mortgage is recorded in the County Clerk's office with "Mortgage Electronic Registration Systems, Inc." named as the lender's nominee or mortgagee of record on the instrument. During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in MERS's private system. In the MERS system, the mortgagor is notified of transfers of servicing rights pursuant to the Truth in Lending Act, but not necessarily of assignments of the beneficial interest in the mortgage.

The sole issue in this case is whether MERS, as a mortgagee, but not a noteholder, could exercise its contractual right to foreclose by means of advertisement.

### C. MCL 600.3204(1)(d)

Foreclosure by advertisement is governed by MCL 600.3204(1)(d), which provides, in pertinent part:

> [A] party may foreclose a mortgage by advertisement if all of the following circumstances exist:
>
> \*   \*   \*
>
> (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

The parties agree that MERS was neither the owner of the indebtedness nor the servicing agent of the mortgage. Therefore, MERS lacked the authority to foreclose by advertisement on defendants' properties unless it was "the owner . . . of an interest in the indebtedness secured by the mortgage . . . ." MCL 600.3204(1)(d).

The question, then, is what is required to be the "owner . . . of an interest in the indebtedness secured by the mortgage." According to Black's Law Dictionary, to "own" means "[t]o have a good legal title; to hold as property; to have a legal or rightful title to . . . ." Black's Law Dictionary (6th ed), p 1105. The dictionary defines an "interest" as "[t]he most general term that can be employed to denote a right, claim, title, or legal share in something." *Id.*, p 812. "Indebtedness" is defined as "[t]he state of being in debt . . . [t]he owing of a sum of money upon a certain and express agreement." *Id.*, p 768.

In each of these cases, a promissory note was exchanged for a loan. Thus, reasonably construing the statute according to its common legal meaning, *ISB Sales Co*, 258 Mich App at 526-527, the defendants' indebtedness is solely based on the notes because de-

fendants owed monies pursuant to the terms of the notes. Consequently, in order for a party to own an interest in the indebtedness, it must have a legal share, title, or right in a note.

Plaintiffs' suggestion that an "interest in the mortgage" is sufficient under MCL 600.3204(1)(d) is without merit. This is necessarily so, because the indebtedness, i.e., the note, and the mortgage are two different legal transactions providing two different sets of rights, even though they are typically employed together. A "mortgage" is "[a] conveyance of title to property that is given as security for the payment of a debt or the performance of a duty and that will become void upon payment or performance according to the stipulated terms." Black's Law Dictionary (7th ed), p 1026. The mortgagee has an interest in the *property*. See *Capital Mtg Corp v Mich Basic Prop Ins Ass'n*, 111 Mich App 393, 397; 314 NW2d 635 (1981) (referring to the "mortgagee's interests in the property"). The mortgagor covenants, pursuant to the mortgage, that if the money borrowed under the note is not repaid, the mortgagee will retain an interest in the *property*. Thus, unlike a note, which provides evidence of a debt and represents the obligation to repay, a mortgage represents an interest in real property contingent on the failure of the borrower to repay the lender. The indebtedness, i.e., the note, and the mortgage are two different things.

Applying these considerations to the present cases, it becomes obvious that MERS did not have the authority to foreclose by advertisement on defendants' properties. Pursuant to the mortgages, defendants were the mortgagors and MERS was the mortgagee. However, it was the plaintiff lenders that lent defendants money pursuant to the terms of the notes. In each case, MERS, as mortgagee, only held an interest in the *property* as

security for the note, not an interest in the note itself.
MERS could not attempt to enforce the note nor could
it obtain any payment on the loan on its own behalf or
on behalf of the lender. Moreover, each mortgage spe-
cifically clarified that, although MERS was the mort-
gagee, MERS held "only legal title to the interests
granted" by the relevant defendant in the *mortgage*.[3]
Consequently, MERS's interest in each mortgage rep-
resented, at most, an interest in the relevant defen-
dant's property. MERS was not referred to in any way
in the notes and only Homecomings held the notes. The
record evidence establishes that MERS owned neither
the notes, nor an interest, legal share, or right in the
notes. The only interest MERS possessed was in the
properties through the mortgages. Given that the notes
and the mortgages are separate documents, providing
evidence of separate obligations and interests, MERS's
interest in the mortgages did not give it an interest in
the debts.

Moreover, plaintiffs' analysis ignores the fact that the
statute does not merely require an "interest" in the
debt, but rather it requires that the foreclosing party
*own* that interest. As already noted, to own means "[t]o
have a good legal title; to hold as property; to have a
legal or rightful title to . . . ." Black's Law Dictionary
(6th ed), p 1105. None of these terms describes MERS's
relationship to the notes. Plaintiffs' claim—that MERS
was a contractual owner of an interest in the notes
pursuant to the agreements between MERS and the
lenders—misstates the interests created by the agree-
ments. Although MERS stood to benefit if the debt was
not paid—it could become the owner of the property—it

---

[3] We note that, in these cases, MERS disclaims any interest in the
properties other than the legal right to foreclose and immediately
quitclaim each property to the true owner, i.e., the appropriate lender.

was to receive no benefit if the debt was paid. MERS had no right to possess the debt, or the money paid on it. Likewise, it had no right to use or convey the notes. Its only "right to possess" was the right to possess the property if and when foreclosure occurred. Had the lender decided to forgive the debt in the notes, MERS would have had no recourse; it could not have sued the lender for any financial loss. Accordingly, it owned no financial interest in the notes. Indeed, it is uncontested that MERS is wholly without legal or rightful title to the debt and that there are no circumstances under which it is entitled to receive any payments on the notes.

The dissent relies on the language in the mortgage instruments to suggest a contractual basis to find that MERS had an ownership interest in the loans. However, the fact that Homecomings gave MERS authority to take "any action required of the Lender" did not transform MERS into an owner of an interest in the notes. Trustees have the authority to take action on behalf of a trust; they can even be authorized to take "any" action. Nevertheless, such authority does not give them an ownership interest in the trust. Moreover, the provision on which the dissent relies (but does not fully quote) contains language limiting MERS to taking action on behalf of the lenders' equitable interest in the mortgage instruments.[4] The relevant language provides that the borrower "understands and agrees that MERS holds only legal title *to the interests granted by Borrower in this Security Instrument*" and gives MERS "the right: to exercise any or all *of those interests* . . . and to

_____

[4] Though the lenders do not hold legal title to the mortgage instruments, they do have an equitable interest therein. See *Aiton v Slater*, 298 Mich 469, 480; 299 NW 149 (1941); *Atwood v Schlee*, 269 Mich 322; 257 NW 712 (1934). The lenders' equitable interest in the mortgages does not, however, translate into an equitable interest for MERS in the loans.

take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." (Emphasis and underlining added.) Thus, the contract language expressly limits the interests MERS owns to those granted in the mortgage instrument and limits MERS's right to take action to those actions related to the mortgage instrument. Nothing in this language permits MERS to take any action with respect to the debt, or provides it any interest therein.

Finally, even assuming that the contract language did create such a right, Homecomings cannot grant MERS the authority to take action when the statute prohibits it. Regardless of whether Homecomings would like MERS to be able to take such action, it can only grant MERS the authority to take actions that our Legislature has statutorily permitted. Where the Legislature has limited the availability to take action to a specified group of individuals, parties cannot grant an entity that falls outside that group the authority to take such action. Here, the Legislature specifically requires ownership of an interest in the note before permitting foreclosure by advertisement.

The contention that the contract between MERS and Homecomings provided MERS with an ownership interest in the notes stretches the concept of legal ownership past the breaking point. While the term may be used very loosely in some popular contexts, such as the expression to "own a feeling," such use refers to a subjective quality or experience. We are confident that such a loose and uncertain meaning is not what the Legislature intended. Rather, the Legislature used the word "owner" because it meant to invoke a legal or equitable right of ownership. Viewed in that context, although MERS owns the mortgages, it owns neither

the related debt nor an interest in any portion of the debt, and is not a secondary beneficiary of the payment of the debt.[5]

The dissent's conclusion that MERS owns an interest in each note because whether it ultimately receives the property depends on whether the note is paid, similarly distorts the term "interest" from a legal term of art to a generalized popular understanding of the word. It may be that MERS is concerned with (i.e., interested in) whether the loans are paid because that will define its actions vis-à-vis the properties, but being concerned about whether someone pays his or her loan is not the same as having a legal right, or even a contingent legal right, to those payments.

Plaintiffs are mistaken in their suggestion that our conclusion that MERS does not have "an interest in the indebtedness" renders that category in the statute nugatory. We need not determine the precise scope of that category, but, by way of example, any party to whom a note has been pledged as security by the lender has "an interest in the indebtedness" because, under appropriate circumstances, it owns the right to the repayment of that loan.

Plaintiffs also argue that MERS had the authority to foreclose by advertisement as the agent or nominee of

---

[5] The dissent's analogy between MERS's ability to "own an interest" in the notes and an easement-holder's ownership of an interest in land without owning the land is unavailing. An easement holder owns rights to the land that even the landholder cannot infringe upon or divest him or her of, see *Dobie v Morrison*, 227 Mich App 536, 541; 575 NW2d 817 (1998) (noting that a fee owner cannot use the burdened land in any manner that would interfere with the easement holders' rights), while the interest the dissent contends that MERS "owns" would be equal to or less than that of the noteholders and the noteholders could completely divest MERS of the alleged interest by forgiving the notes without MERS having any recourse. Accordingly, the analogy fails.

Homecomings, who held the notes and an equitable interest in the mortgages. However, this argument must also fail under the statute because the statute explicitly requires that, in order to foreclose by advertisement, the foreclosing party must possess an interest in the indebtedness. MCL 600.3204(1)(d). It simply does not permit foreclosure by advertisement in the name of an agent or a nominee. If the Legislature intended to permit such actions, it could have easily included "agents or nominees of the noteholder" as parties that could foreclose by advertisement. Indeed, had the Legislature intended the result suggested by plaintiffs, it would have merely had to delete the word "servicing." The law is clear that this Court must "avoid a construction that would render any part of the statute surplusage or nugatory." *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001). Thus, the Legislature's choice to permit only servicing agents, and not all agents, to foreclose by advertisement must be given effect.

Similarly, we reject plaintiffs' reliance on *Jackson v Mtg Electronic Registration Sys, Inc*, 770 NW2d 487 (Minn, 2009). *Jackson*, a Minnesota case, is inapplicable because it interpreted a statute that is substantially different from MCL 600.3204. The statute at issue in *Jackson* specifically permits foreclosure by advertisement if "a mortgage is granted to a mortgagee as nominee or agent for a third party identified in the mortgage, and the third party's successors and assigns[.]" *Jackson*, 770 NW2d at 491, quoting Minn Stat 507.413(a)(1). Thus, the Minnesota statute specifically provides for foreclosure by advertisement by entities that stand in the exact position that MERS does here. Indeed, the Minnesota statute is "frequently called 'the MERS statute . . . .' " *Id.* at 491. Our statute, MCL 600.3204(1)(d) makes no references to nominees or

agents. Rather, it requires that the party foreclosing be either the mortgage servicer or have an ownership interest in the indebtedness. The *Jackson* statute also revolves around the mortgage, unlike MCL 600.3204(1)(d), which uses the term indebtedness, which, as discussed previously, is a reference to the note, not the mortgage. Thus, *Jackson* has no application to the case at bar. Moreover, the Minnesota statute demonstrates that if our Legislature had intended to allow MERS to foreclose by advertisement, it could readily have passed a statute including language like that included in Minnesota.

### D. ANALYSIS BEYOND THE LANGUAGE OF THE STATUTE

Plaintiffs suggest that, despite the plain language of the statute, the Legislature did not create three discrete categories of entities that could foreclose by advertisement. Instead, plaintiffs assert that the Legislature envisioned a *continuum* of entities: those that actually own the loan, those that service the loan, and some ill-defined category that might be called "everything in between." However, courts may not "rewrite the plain statutory language and substitute our own policy decisions for those already made by the Legislature." *DiBenedetto v West Shore Hosp*, 461 Mich 394, 405; 605 NW2d 300 (2000). Thus, without any language in the statute providing for a "continuum," let alone an analysis of what it constitutes, we find no merit in this position.

Plaintiffs also raise a straw man argument by citing this Court's decision in *Davenport v HSBC Bank USA*, 275 Mich App 344; 739 NW2d 383 (2007), where we observed that "[o]ur Supreme Court has explicitly held that '[o]nly the record holder of the mortgage has the power to foreclose' under MCL 600.3204." *Davenport*,

275 Mich App at 347, quoting *Arnold v DMR Fin Servs, Inc (After Remand)*, 448 Mich 671, 678; 532 NW2d 852 (1995). However, the facts in *Davenport* do not reflect that the party who held the note was a different party than the party who was the mortgagee. *Davenport*, 275 Mich App at 345. Indeed, the fact that the Court used the term "mortgage" interchangeably with "indebtedness," *id.* at 345-347, rather than distinguishing the two terms, indicates that the same party held both the note and the mortgage. Because the instant cases involve a situation where the noteholder and the mortgage holder are separate entities, the general proposition set forth in *Davenport* does not apply. There is nothing in *Davenport* holding that a party that owns only the mortgage and not the note has an ownership interest in the debt.[6]

We also note that *Arnold*, the Supreme Court case relied on in *Davenport*, was interpreting a previous version of MCL 600.3204, which was substantially revised when the Legislature adopted the version we must apply in this case. The statute as it existed when *Arnold* was decided included a provision stating:

> "To entitle any party to give a notice as hereinafter prescribed, and to make such a foreclosure, it shall be requisite:

> \* \* \*

> "(3) That the mortgage containing such power of sale has been duly recorded; and if it shall have been assigned that all the assignments thereof shall have been recorded." [*Arnold*, 448 Mich at 676, quoting MCL 600.3204(3).]

---

[6] In addition, while we reject plaintiffs' overly broad reading of *Davenport* for the reasons just stated, we note that even under their reading, plaintiffs would merely have to obtain an assignment of the mortgage from MERS before initiating foreclosure proceedings.

This requirement, that a noteholder could only foreclose by advertisement if the mortgage it holds is duly recorded, is no longer part of the statute and does not apply in this case. The version of the statute interpreted in *Arnold* also lacked the language, later adopted, and operative in this case, specifically permitting foreclosure by advertisement by the owner of the note. Moreover, the language that the Legislature chose to adopt in the amended statute appears to reflect an intent to protect borrowers from having their mortgages foreclosed on by advertisement by those who did not own the note because it would put the borrowers at risk of being foreclosed but still owing the noteholder the full amount of the loan.

Under MCL 440.3602(1)(*ii*), an instrument is only discharged when payment is made "to a person entitled to enforce the instrument." Those parties listed in MCL 600.3204(1)(d)—the servicer, the owner of the debt, or someone owning an interest in the debt—would all be persons entitled to enforce the instrument that reflects the indebtedness. As previously noted, MERS is not entitled to enforce the notes. Thus, if MERS were permitted to foreclose on the properties, the borrowers obligated under each note would potentially be subject to a double recovery for the debt. That is, having lost their property to MERS, they could still be sued by the noteholder for the amount of the debt because MERS does not have the authority to discharge the note. MERS members may agree to relinquish the right of collection once foreclosure occurs, but even if they were to do so within MERS, that would not necessarily protect the borrower in the event a lender violated that policy or the note was subsequently transferred to someone other than the lender.[7]

---

[7] The dissent's observation that, had Homecomings remained the mortgagee, it would have had the right to foreclose by advertisement does not change the outcome because the statutory language provides that it

These risks are, however, not present in a judicial foreclosure. MCL 600.3105(2) provides:

> After a complaint has been filed to foreclose a mortgage on real estate or land contract, while it is pending, and after a judgment has been rendered upon it, no separate proceeding shall be had for the recovery of the debt secured by the mortgage, or any part of it, unless authorized by the court.

Thus, once a judicial foreclosure proceeding on the mortgage has begun, a subsequent action on the note is prohibited, absent court authorization, thereby protecting the mortgagor from double recovery. See *Church & Church, Inc v A-1 Carpentry*, 281 Mich App 330, 341-342; 766 NW2d 30 (2008), aff'd in part and vacated in part on other grounds 483 Mich 885 (2009); *United States v Leslie*, 421 F2d 763, 766 (CA 6, 1970) ("[I]t is the purpose of the statute to force an election of remedies which if not made would create the possibility that the mortgagee could foreclose the mortgage and at the same time hold the maker of the note personally liable for the debt.").

Given that this risk of a double recovery only occurs when the mortgage holder and the noteholder are separate, the Legislature limited foreclosure by advertisement to those parties that were entitled to enforce the debt instrument, resulting in an automatic credit toward payment on the instrument in the event of foreclosure.[8]

---

is Homecomings' additional status as the *noteholder* that would give it that right. The question before us is whether a mortgagee that is *not* a noteholder has the right to foreclose by advertisement.

[8] The dissent's assertion that MCL 600.3105(2) provides for an election of remedies that prevents this double recovery is erroneous, because that statute governs only judicial foreclosures, not foreclosures by advertisement. MCL 600.3105(2) requires the filing of a complaint, something that does not occur in foreclosure by advertisement. Absent a complaint, there

While MERS seeks to blur the lines between itself and the lenders in this case in order to position itself as a party that may take advantage of the restricted tool of foreclosure by advertisement, it has, in other cases, sought to clearly define those lines in order to avoid the responsibilities that come with being a lender. For example, in *Mtg Electronic Registration Sys, Inc v Nebraska Dep't of Banking & Fin*, 270 Neb 529; 704 NW2d 784 (2005), the Nebraska Department of Banking and Finance asserted that MERS was a mortgage banker and, therefore, subject to licensing and registration requirements. *Id.* at 530. MERS successfully maintained that it had nothing to do with the loans and did not even have an equitable interest in the property, holding only "legal title to the interests granted by Borrower . . . ." *Id.* at 534 (quotation marks omitted). The court accepted MERS's argument that it was not a lender, but merely a shell designed to make buying and selling of loans easier and faster by disconnecting the mortgage from the loan. *Id.* at 535. Having separated the mortgages from the loans, and disclaimed any interest in the loans in order to avoid the legal *responsibilities* of a lender, MERS nevertheless claims in the instant cases that it can employ the *rights* of a lender by foreclosing in a manner that the statute affords only to those mortgagees who also own an interest in the loan. But as the Nebraska court stated in adopting MERS's argument, "MERS has no independent right to collect

---

would be neither a time during which a complaint would be "pending" nor any judgment that could be "rendered upon it" that would prohibit the filing of any "separate proceeding . . . for the recovery of the debt secured by the mortgage . . . ." See also *Cheff v Edwards*, 203 Mich App 557, 560; 513 NW2d 439 (1994) (holding that "foreclosure by advertisement is not a judicial action"). Consequently, the prohibitions expressed in MCL 600.3105(2) would not apply to foreclosure by advertisement and, therefore, would not protect borrowers from double recovery if MERS were permitted to foreclose by advertisement.

on any debt because MERS itself has not extended credit, and none of the mortgage debtors owe MERS any money." *Id.*

The separation of the note from the mortgage in order to speed the sale of mortgage debt without having to deal with all the "paper work" of mortgage transfers appears to be the sole reason for MERS's existence. The flip side of separating the note from the mortgage is that it can slow the mechanism of foreclosure by requiring judicial action rather than allowing foreclosure by advertisement. To the degree that there were expediencies and potential economic benefits in separating the mortgagee from the noteholder so as to speed the sale of mortgage-based debt, those lenders that participated were entitled to reap those benefits. However, it is no less true that, to the degree that this separation created risks and potential costs, those same lenders must be responsible for absorbing the costs.

### III. CONCLUSION

Defendants were entitled to judgment as a matter of law because, pursuant to MCL 600.3204(1)(d), MERS did not own the indebtedness, own an interest in the indebtedness secured by the mortgage, or service the mortgage. MERS's inability to comply with the statutory requirements rendered the foreclosure proceedings in both cases void *ab initio*. Thus, the circuit courts improperly affirmed the district courts' decisions to proceed with eviction on the basis of the foreclosures of defendants' properties.

In both Docket Nos. 290248 and 291443, we reverse the circuit courts' affirmance of the district courts' orders, vacate the foreclosure proceedings, and remand for further proceedings consistent with this opinion. We

do not retain jurisdiction. Defendants, as the prevailing parties, may tax costs. MCR 7.219(A).

SERVITTO, J., concurred with SHAPIRO, J.

WILDER, P.J. (*dissenting*). Because I conclude that, pursuant to MCL 600.3204(1)(d), Mortgage Electronic Registration Systems, Inc. (MERS), was "the owner . . . of an interest in the indebtedness secured by the mortgage" at issue in each of these consolidated appeals, I respectfully dissent.

I

Defendant Gerald Saurman (Saurman) and defendant Corey Messner (Messner) executed promissory notes in exchange for loans from Homecomings Financial, LLC (Homecomings). To secure the repayment of the loans, Saurman and Messner executed mortgage agreements that encumbered the properties purchased with the money loaned to them by Homecomings. The mortgage agreements provided that MERS, "solely as a nominee for [Homecomings] and [Homecomings'] successors and assigns," was the mortgagee under each security instrument and held the legal interests to the properties, and that MERS's interests under each security instrument, as nominee for Homecomings, included the right to foreclose and sell the properties. The mortgage agreements also provided that MERS had the obligation "to take any action required of [Homecomings], including, but not limited to, releasing and canceling" the security instruments. Though it was not the mortgagee, as the lender, Homecomings retained an equitable interest in the mortgages.

Both Saurman and Messner defaulted on their payments, and MERS initiated nonjudicial foreclosure by

advertisement under MCL 600.3201 *et seq.* MERS purchased the properties in sheriff's sales, and subsequently, quitclaimed Saurman's property to Residential Funding Co, LLC (RFC), and Messner's property to Bank of New York Trust Company (BNYT). After the redemption periods expired, RFC and BNYT each sought to obtain possession of the respective properties. During eviction proceedings, Saurman and Messner each challenged the foreclosure by MERS, asserting that MERS was not the servicing agent, did not own the indebtedness secured by the mortgage, and did not own an interest in the indebtedness secured by the mortgage as required by MCL 600.3204(1)(d). These arguments were rejected by both the district courts and the circuit courts, and this Court granted leave to appeal.

II

This Court reviews de novo rulings made on a motion for summary disposition including a circuit court's affirmance of a district court's ruling on a motion for summary disposition. *Thorn v Mercy Mem Hosp Corp*, 281 Mich App 644, 647; 761 NW2d 414 (2008); *First of America Bank v Thompson*, 217 Mich App 581, 583; 552 NW2d 516 (1996). Issues of statutory construction are questions of law, which this Court reviews de novo on appeal. *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 417; 733 NW2d 755 (2007). Statutory construction discerns and gives effect to the Legislature's intent. *Potter v McLeary*, 484 Mich 397, 410; 774 NW2d 1 (2009). In determining that intent, this Court first looks to the language of the statute. *Id.* The interpretation of the language must accord with the legislative intent. *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009). As far as possible, this Court gives effect to every phrase, clause, and word in the statute.

*Id.* "The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended." *Id.* (quotation marks and citations omitted). Courts read a statute as a whole, and individual words and phrases, while important, are read in the context of the entire legislative scheme. *Id.*

"The interpretation of a contract is also a question of law this Court reviews de novo . . . ." *DaimlerChrysler Corp v G-Tech Prof Staffing, Inc*, 260 Mich App 183, 184-185; 678 NW2d 647 (2003). A contract must be interpreted according to its plain and ordinary meaning. *Holmes v Holmes*, 281 Mich App 575, 593; 760 NW2d 300 (2008).

> Under ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court. If the contract is subject to two reasonable interpretations [or the provisions irreconcilably conflict with each other], factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate. If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous. [*Meagher v Wayne State Univ*, 222 Mich App 700, 721-722; 565 NW2d 401 (1997) (citations omitted).]

See also *Shaw v Ecorse*, 283 Mich App 1, 22; 770 NW2d 31 (2009). A court may not rewrite clear and unambiguous language under the guise of interpretation. *Woodington v Shokoohi*, 288 Mich App 352, 374; 792 NW2d 63 (2010). Rather, "courts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003).

III

MCL 600.3204 provides, in relevant part:

(1) [A] party may foreclose a mortgage by advertisement if all of the following circumstances exist:

(a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.

(b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage; or, if an action or proceeding has been instituted, the action or proceeding has been discontinued; or an execution on a judgment rendered in an action or proceeding has been returned unsatisfied, in whole or in part.

(c) The mortgage containing the power of sale has been properly recorded.

(d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

There are three categories of parties who may foreclose by advertisement under MCL 600.3204(1)(d): (1) the owner of the indebtedness secured by the mortgage; (2) the servicing agent of the mortgage; and (3) the owner of *an interest* in the indebtedness secured by the mortgage. Because we must give meaning to each of these phrases and each word in the phrases in order to give effect to the Legislature's intent, *Bush*, 484 Mich at 167, it is clear that the owner of an interest in the indebtedness secured by the mortgage, while accorded the same right to foreclose by advertisement, is a person or entity different from either the owner of the indebtedness secured by the mortgage or the servicing agent of the mortgage. To "own" means "[t]o have a good legal title; to hold as property; to have a legal or rightful title to . . . ." Black's Law Dictionary (6th ed), p 1105.

"Owner" is defined as, "[the] person in whom is vested the ownership, dominion, or title of property; proprietor. He who has dominion of a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases, even to spoil or destroy it, as far as the law permits, unless he be prevented by some agreement or covenant which restrains his right." *Id.* "Indebtedness" is defined as "[t]he state of being in debt" or "[t]he owing of a sum of money upon a certain and express agreement." *Id.*, p 768. The indebtedness secured by the mortgages are, in these cases, the promissory notes signed by Saurman and Messner. Thus, the owner of the indebtedness secured by the mortgage owns the debt or the notes. In these cases, the owner of the indebtedness is Homecomings.

The signature questions presented in these cases are what it means to own "an interest" in the indebtedness secured by the mortgage, i.e., to own an interest in the debt or the note, as opposed to owning the debt or the note, and what entity or person the Legislature meant to refer to when it permitted "the owner . . . of an interest in the indebtedness secured by the mortgage" to have the same ability as the owner of the indebtedness and the servicer of the mortgage to foreclose by advertisement. In general,

> [t]he right to foreclosure by advertisement is statutory. *Calaveras Timber Co v Michigan Trust Co*, 278 Mich 445, 450; 270 NW 743 (1936). Such foreclosures are a matter of contract, authorized by the mortgagor, and ought not be hampered by an unreasonably strict construction of the law. *Cramer v Metro S & L Ass'n*, 401 Mich 252, 261; 258 NW2d 20 (1977). Harsh results may and often do occur because of mortgage foreclosure sales, "but we have never held that because thereof, such sale should be enjoined, when no showing of fraud or irregularity is made." *Calaveras Timber Co*, [278 Mich] at 454. [*Church & Church, Inc*

*v A-1 Carpentry*, 281 Mich App 330, 339-340; 766 NW2d 30
(2008), aff'd in part and vacated in part on other grounds
483 Mich 885 (2009).]

"Interest" is defined, in part, as "[t]he most general
term that can be employed to denote a right, claim, title,
or legal share in something . . . . The word 'interest' is
used in the Restatement of Property both generically to
include varying aggregates of rights, privileges, powers
and immunities and distributively to mean any one of
them." Black's Law Dictionary (6th ed), p 812. "Mort-
gage" is defined as "an interest in land created by a
written instrument providing security for the perfor-
mance of a duty or the payment of a debt." *Id.*, p 1009.
Notably, "[t]he mortgage operates as a conveyance of
the legal title to the mortgagee, but such title is subject
to defeasance on payment of the debt or performance of
the duty by the mortgagor." *Id.*, p 1010. In other words,
the mortgagee's title is defeated when the debt is paid.

I would conclude that, as mortgagee, MERS owned a
contractual interest in the indebtednesss. If the indebt-
edness is paid in conjunction with the note, MERS has
the contractual obligation to cancel the security agree-
ment because its title is defeated. If the indebtedness is
not paid, however, MERS has the contractual right and
obligation to exercise the rights granted to it by the
mortgagors, including the right to foreclose by adver-
tisement under the statute. In other words, MERS's
interest in the indebtedness is derived from the fact
that its contractual obligations as mortgagee were de-
pendent on whether the mortgagor met the obligation
to pay the indebtedness that the mortgage secured.

According to the security instruments, MERS was
the nominee of Homecomings and held its status as
mortgagee only in that capacity. "Nominee" is defined
as "[a] person designated to act in place of another, usu.

in a very limited way . . . [a] party who holds bare legal title for the benefit of others . . . ." Black's Law Dictionary (9th ed), p 1149. Although Saurman and Messner each agreed that MERS held "only legal title to the interests granted" in the respective security instruments, the security interest was specifically created to secure performance by Saurman and Messner of the obligation each undertook in a note, namely, to repay the debt. In other words, the security interest created was specifically linked to the debt and specifically created to ensure payment of the debt. Saurman and Messner each agreed that "if necessary to comply with law or custom, MERS (as nominee for [Homecomings] . . . , ha[d] the right . . . to take any action required of [Homecomings] including, but not limited to, releasing and canceling" the security instruments.

By conveying the right to take *any* action required of it, Homecomings gave, and MERS received, a greater interest than just an interest in the property as security for the note, namely it gave the contractual right to act for the benefit of Homecomings. MERS's interest in the debt reflected by the note is inextricably linked to its obligations under the mortgage. For example, if Saurman and Messner had satisfied their notes, MERS would have been obligated to cancel the security instruments on behalf of Homecomings. Alternatively, if Saurman and Messner had elected to sell their properties without Homecomings' prior written consent, MERS would have had the right to exercise on behalf of Homecomings the option to require immediate payment in full of all sums secured by the security instruments. Failure to pay in full would have then given MERS the right to invoke remedies such as foreclosure of the properties, as provided in the security instruments. In short, MERS was the contractual owner of an interest in the notes, which were secured by the mortgages.

There is no dispute that, had Homecomings retained its status as mortgagee, it would have been entitled to foreclose by advertisement upon the defaults by Saurman and Messner. Nothing in MCL 600.3204 precludes a noteholder-mortgagee from delegating, by contract, some of its rights and responsibilities under the statute and the mortgage to a nominee that, while not the owner of the note and, therefore, not the holder of an interest in the note identical to that of the noteholder, nevertheless, clearly has an interest in whether the note is paid or defaulted on.[1]

Finally, it bears noting that, contrary to the majority's contention that permitting MERS to foreclose by advertisement could potentially subject the mortgagors to a double recovery for the same debt, MCL 600.3105(2) forces an election of remedies, so that Homecomings would be precluded from the recovery of any debt secured by the mortgage if a foreclosure proceeding had already been initiated by MERS.

I would conclude that MERS did have the authority to foreclose on defendants' properties by advertisement. I would affirm in each case.

---

[1] In this regard, MERS's interest in the indebtedness is similar to the interest held by one who possesses an easement right. "[A]n easement is a [sic] not a possessory right." *Terlecki v Stewart*, 278 Mich App 644, 659; 754 NW2d 899 (2008). Rather, "[a]n easement is, by nature, a limited property *interest*. It is a right to use the land burdened by the easement rather than a right to occupy and possess [the land] as does an estate owner." *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 378-379; 699 NW2d 272 (2005) (quotation marks and citations omitted; emphasis added and deleted). Because one can "own" an easement right and have an interest in land without owning the land, so, too, can MERS "own" an interest in the note held by Homecomings without actually owning the note.