Patrick McCANN and Deborah McCann, Plaintiffs,

v.

U.S. BANK, N.A., as Trustee for the Structured Asset Securities Corporation, Series 2006–OW1, Defendant.

Case No. 11–14804.

United States District Court,
E.D. Michigan,
Northern Division.

May 25, 2012.

Adam J. Gantz, Nickolas C. Buonodono, Gantz Associates, Farmington Hills, MI, for Plaintiffs.

Matthew J. Boettcher, Plunkett & Cooney, Bloomfield Hills, MI, for Defendant.

## OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION, AND GRANTING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

THOMAS L. LUDINGTON, District Judge.

This case concerns a pending mortgage foreclosure by advertisement on a private residence. The plaintiffs have defaulted on the loan, the defendant is in possession of the promissory note endorsed in blank, and the assignment from the original mortgagee to the defendant is recorded in the county land records. The parties' primary dispute is whether the defendant has the authority to foreclose on the property. The ancillary dispute is whether the statute of frauds bars the plaintiffs' claims of breach of contract, promissory estoppel, and fraud regarding an alleged oral agreement to modify the interest rate of the loan. For the reasons that follow, the Court answers both questions in the affirmative.

Plaintiffs Patrick and Deborah McCann commenced this case in state court, filing a twelve-count complaint against Defendant seeking to enjoin the foreclosure by advertisement of their residence, money damages, and attorney fees. Defendant U.S. Bank, N.A., as Trustee for the Structured Asset Securities Corporation, Series 2006–OW1, removed the case to this court. In lieu of answering, Defendant moved to dismiss the complaint. ECF No. 3. Magistrate Judge Charles Binder issued a report and recommendation on April 3, 2012, recommending that the Court grant the motion to dismiss. ECF No. 11. Plaintiffs timely filed objections to Judge Binder's report and recommendation on April 17, 2012. ECF No. 11. As detailed below, the Court will overrule Plaintiffs' objections, adopt Judge Binder's report and rec-ommendation, and grant Defendant's motion to dismiss.

## I

On September 1, 2005, Plaintiffs obtained a home loan from Ownit Mortgage Solutions, Inc., to purchase a residence located at 1784 South 5 Mile Road in Midland, Michigan. The loan was for $120,000 with an annual interest rate of 7.875 percent. In exchange for the loan, Plaintiffs executed two documents, a mortgage and promissory note.

The mortgage is attached to the complaint as exhibit A. It identifies the borrowers, "Patrick H. McCann and Deborah L. McCann, husband and wife as joint tenants," as well as the lender, "Ownit Mortgage Solutions, Inc, a California corporation." Compl. Ex. A. The mortgage also identifies the mortgagee and lender's nominee, specifying: "MERS is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument." *Id.*

The promissory note is also part of the record. Def.'s Reply Br. Supp. Mot. to Dismiss Ex. 5 ("Def.'s Reply. Br."). "In return for a loan that I have received," the note provides, "I promise to pay U.S. $120,000.00 (this amount is called "Principal"), to the order of the Lender. The Lender is Ownit Mortgage Solutions, Inc., a California corporation." *Id.* at 1. The note continues: "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" *Id.* Mr. McCann endorsed the note; Mrs. McCann did not. *Id.* at 3. A repre-

sentative of Ownit also endorsed the note, in blank.[1] *Id.* at 4.

In July 2006, MERS assigned the mortgage to Defendant. The assignment is attached to the complaint as exhibit B. In pertinent part, it provides:

> Know all men by these presents, that Mortgage Electronic Registration Systems, Inc. as nominee for Lender and Lender's successors and/or assigns, . . . for and in consideration of the sum of One Dollar ($1.00) and other valuable considerations, lawful money of the United States of America, to it paid by [Defendant] . . . does hereby sell, assign and transfer to [Defendant], all the right, title and interest of [MERS] in and to a certain real estate mortgage made by Patrick H. McCann and Deborah L. McCann, Husband and Wife as Joint Tenants, original mortgagor(s), to Mortgage Electronic Registration Systems, Inc., as nominee for Lender and Lender's successors and/or assigns, Mortgagee, dated September 1, 2005.

Compl. Ex. B. On July 17, 2006, the assignment was recorded in the Midland County land records.

Sometime later, Ownit went out of business. "As a result," the complaint asserts, "it is Plaintiffs' position that the mortgage at issue can *never* be foreclosed on, by *anyone.*" Compl. ¶ 18 (emphasis in original).

In March 2010, Plaintiffs contacted their mortgage servicing agent, America's Servicing Company ("ASC"), and requested a modification of the terms of the mortgage. *Id.* ¶ 19. In May 2010, the complaint alleges, ASC told Plaintiffs "that their loan would be permanently modified from the fraudulently inflated rate of 7.875% to a more reasonable 4.5%, which would reduce their payment from $1,057 per month to $786.90 per month. A representative of ASC who identified himself as Robert Grant further informed Plaintiffs that all they had to do to ensure the permanent modification of their loan was to make a payment in June, 2010 of $689, followed by five monthly installments of $786.90 [i.e., through November 2010]." *Id.* ¶ 22 (emphasis omitted). In November 2010, the complaint further alleges, Mr. Grant "stopped calling the prior agreement a 'trial period,' and started calling it a 'forbearance plan,' which is a completely different kind of agreement." *Id.* ¶ 24.

In February 2011, the complaint continues, ASC notified Plaintiffs that they had been approved for a permanent loan modification, reducing their interest rate from 7.875 percent to 6.5 percent, "and if that wasn't bad enough, the agreement showed that as a result of the forbearance period, there was now a $5,000 arrearage that did not exist prior to the forbearance period, which would be tacked onto to the back end of Plaintiff's loan." Compl. ¶ 27.

In June 2011, a second assignment of mortgage from MERS to Defendant was executed and recorded in the land records of Midland County. The following month, Defendant commenced foreclosure by advertisement proceedings. *See id.* Ex. F. The public auction was noticed for October 25, 2011.

---

1. Plaintiffs, it should be observed, raise an argument regarding the blank endorsement. They write: "From a quick glance at the Note, one can see that the endorsement is crossed out, which means that the Note never was assigned by Ownit or anyone else. Moreover, even if the endorsement to the Note were not crossed out, Defendant has never produced a copy of the Note that indicates to whom the Note was endorsed." Pls.' Objections 9, ECF No. 11. As detailed below, however, Plaintiffs' argument is contradicted by a cursory glance at the face of the note, as well as the law of negotiable instruments.

On October 24, 2011, Plaintiffs filed suit against Defendant in the Midland County Circuit Court. Plaintiffs requested a temporary restraining order preventing the foreclosure auction from proceeding. Additionally, Plaintiffs' complaint contained the following twelve counts: (1) "invalid assignments—no proof of ownership of loan/authority to foreclose"; (2) "breach of contract"; (3) "promissory estoppel"; (4) "intentional fraud"; (5) "constructive fraud"; (6) "unjust enrichment"; (7) "Truth in Lending Act"; (8) "declaratory relief—foreclosure barred by unclean hands"; (9) "breach of contract—implied duty of good faith and fair dealing"; (10) "Mortgage Brokers, Lenders, and Servicers Licensing Act"; (11) "Fair Debt Collection Practices Act"; and (12) "Fair Debt Collection Practices Act." Plaintiffs requested an order enjoining the foreclosure, money damages, and attorney fees.

Defendant removed the case to this Court on November 1, 2011. The case was referred to Judge Binder for general case management pursuant to 28 U.S.C. § 636(b). On November 14, 2011, in lieu of answering Defendant filed a "motion to dismiss and/or for summary judgment" brought "under Fed.R.Civ.P. 12(b)(6) and/or 56(a)." On April 3, 2012, Judge Binder issued a report recommending that the motion be granted and the complaint be dismissed. Plaintiffs timely filed objections to the report.

## II

The district court will make a "de novo determination of those portions of the report ... to which objection is made." 28 U.S.C. § 636(b)(1). The Court is not obligated to review the portions of the report to which no objection was made. *Thomas v. Arn,* 474 U.S. 140, 149–52, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

## III

### A

Plaintiffs first object to Judge Binder's recommendation that the Court dismiss count one. Titled "invalid assignments—no proof of ownership of loan/authority to foreclose," count one alleges that "the chain of title at the Register of Deeds makes it clear that it is Ownit, which no longer exists as a corporate entity, which would be the only person or entity with authority to foreclose." Compl. ¶ 46. It continues: "The Michigan Court of Appeals has held, in authority that is fully binding upon this Court, that MERS is not a mortgagee, but merely a 'nominee' of the mortgagee, and as a result, MERS has been barred under Michigan law from commencing any further foreclosure proceedings in the State of Michigan since approximately April, 2011." *Id.* ¶ 49. (The Michigan Court of Appeals decision referenced in this paragraph of the complaint, *Residential Funding Co. LLC v. Saurman,* 292 Mich.App. 321, 807 N.W.2d 412 (Mich.Ct.App.2011), was summarily reversed by the Michigan Supreme Court less than a month after this case was filed. *Saurman,* 805 N.W.2d 183 (Mich.2011).)

Judge Binder recommends that this count be dismissed because "Plaintiffs lack standing to challenge the validity of the assignment.... Even if Plaintiffs did have standing to challenge the assignments, I suggest that the result would be the same." Report & Recommendation 7–8 (citing *Livonia Props. Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC,* 399 Fed.Appx. 97, 102–03 (6th Cir. 2010); and *Bakri v. Mortgage Elec. Reg. Sys.,* No. 297962, 2011 WL 3476818, at *4 (Mich.Ct.App. Aug. 9, 2011) (unpublished)). Judge Binder elaborates:

Although a Michigan Court of Appeals decision held that MERS, as nominee

for the lender, could not meet the requirements of Mich. Comp. Laws § 600.3204 because it did not have any interest in the promissory note, the Michigan Supreme Court summarily reversed the decision in lieu of granting appeal.... Here, the evidence shows that at the time of the sale, Defendant was the record holder of the mortgage on Plaintiffs' property and, thus, was authorized to foreclose by advertisement.

Report & Recommendation 12–13 (internal footnote and citations omitted) (citing *Saurman*, 292 Mich.App. 321, 807 N.W.2d 412 (Mich.Ct.App.), *rev'd* 490 Mich. 909, 805 N.W.2d 183 (2011)).

Plaintiffs make three principal objections to Judge Binder's recommendation regarding count one. None have merit.

First, Plaintiffs object that the report erred regarding their standing to challenge the assignment, writing that "case law holds that borrowers have standing to challenge void assignments and neither the original lender nor Mortgage Electronic Registration, Inc. validly assigned the note and the mortgage to Defendant." Pls.' Objections 5.

Plaintiffs are correct that debtors have standing to challenge a void assignment. *Livonia*, 399 Fed.Appx. at 102 (citing 6A C.J.S. *Assignments* § 132 (2010)). Plaintiffs are not correct, however, that the assignment from MERS to Defendant is void. On the contrary, Defendant is in possession of the promissory note, which is endorsed in blank by MERS as nominee for the original lender. *See Fortson v. Fed. Home Loan. Mortg.*, 12–CV–10043, 2012 WL 1183692, at *3–6 (E.D.Mich. Apr. 9, 2012) (unpublished) (Steeh, J.).

To elaborate, both the Sixth Circuit and the Michigan Supreme Court hold that a debtor "may assert as a defense any

matter which renders the assignment absolutely invalid or ineffective, or void," but otherwise, "a litigant who is not a party to an assignment lacks standing to challenge that assignment." *Livonia*, 399 Fed.Appx. at 102 (quoting 6A C.J.S. *Assignments* § 132 (2010)); *Bowles v. Oakman*, 246 Mich. 674, 225 N.W. 613, 614 (1929) (holding that maker of a note lacks standing to attack the validity of a transfer of that note). A debtor generally lacks standing to challenge an assignment, the district court explained in *Livonia*, because it is not a third-party beneficiary of the contract between the assignor and assignee:

> Borrower certainly has an interest in avoiding foreclosure. But the validity of the assignments does not effect whether Borrower owes its obligations, but only to whom Borrower is obligated. Although a debtor may assert certain defenses that render an assignment absolutely invalid (such as nonassignability of the right assigned), he generally may not assert any ground which may render the assignment voidable "because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice."

*Livonia Prop. Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC*, 717 F.Supp.2d 724, 735–36 (E.D.Mich.) (quoting 6A C.J.S. Assignments § 132), *aff'd* 399 Fed.Appx. 97 (6th Cir.2010). Affirming, the Sixth Circuit wrote that the debtor only had standing to assert defenses premised on a void assignment giving rise to a risk of having to pay the same debt twice:

> These defenses include nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment, none of which are available in the current matter. Obligors have standing to raise these claims because they can-

not otherwise protect themselves from having to pay the same debt twice. In this case, Livonia is not at risk of paying the debt twice, because Farmington has established that it holds the original note.... Without a genuine claim that Farmington is not the rightful owner of the loan and that Livonia might therefore be subject to double liability on its debt, Livonia cannot credibly claim to have standing to challenge the First Assignment.

399 Fed.Appx. at 102 (internal citations omitted). Here, as in *Livonia,* Plaintiffs do not allege the nonassignability of the instrument, assignee's lack of title, or a prior revocation of the assignment. Plaintiffs, moreover, are not at risk of paying the same debt twice.[2] Plaintiffs lack standing to challenge the validity of the assignment.

Plaintiffs' second objection is that "*Saurman* does not hold that MERS has the blanket authority to assign any and all interests in real property. *Saurman* opinion is not applicable here as it only concerns MERS's ability to foreclose as the foreclosing party. *Saurman* does not discuss MERS's ability to assign an interest to a third party." *Id.* at 6.

▪ Plaintiffs are correct that *Saurman* does not hold that MERS has "blanket authority" to assign interests in real property. Rather, MERS has the specific authority created by the mortgage to act as the mortgagee and the original lender's nominee. Consequently, MERS has statutory authority to enforce a mortgage granted to it as nominee for the lender, including assigning the mortgage. *Luster v. MERS,* No. 11–CV–14166, 2012 WL 124967, *3 (E.D.Mich. Jan. 17, 2012) ("The Michigan Supreme Court ... determined

that MERS does have statutory authority to enforce a mortgage granted to it as nominee for the lender. Therefore, neither *Bakri* nor *Saurman* provides any legal basis for Plaintiffs to challenge MERS' assignment of the mortgage to [a third-party] or [the third-party's] foreclosure of the mortgage.") (Rosen, C.J.), *cited in* Def.'s Resp. to Pls.' Objections 7, ECF No. 12; *see also Fortson,* 2012 WL 1183692, at *4 ("A mortgage assignment by MERS and eventual foreclosure sale by the assignee is consistent with the foreclosure by advertisement statute.").

Finally, Plaintiffs object that "even if MERS somehow had the authority to assign the Note to Defendant, there is still the issue of whether Defendant, as an asset-backed security or mortgage-backed security, actually owned the Note and the Mortgage." *Id.* at 8. Plaintiffs write:

Plaintiffs respectfully believe that the Report erred in finding that Defendant had the authority to foreclose because the Note was not a "blank endorsement," as Defendant contends. From a quick glance at the Note, one can see that the endorsement is crossed out, which means that the Note never was assigned by Ownit or anyone else. Moreover, even if the endorsement to the Note were not crossed out, Defendant has never produced a copy of the Note that indicates to whom the Note was endorsed. Based on these facts (and, again, a full development of the facts through the discovery process would be necessary), Defendant never was assigned the Note and, consequently, the Mortgage and therefore could not have had the authority to foreclose.

2. Indeed, Plaintiffs do not contend that they are or that they face two entities threatening foreclosure. Rather, as Ownit is now defunct,

"it is Plaintiffs' position that the mortgage at issue can *never* be foreclosed on, by *anyone.*" Compl. ¶ 18 (emphasis in original).

Pls.' Objections 9 (internal citations omitted).

■ Plaintiffs' argument is contradicted by a cursory glance at the face of the note, as well as the law of negotiable instruments. As Defendant observes, "the endorsement was not crossed out. While there is a line partially bisecting the endorsement, that line is part of a larger scribble on the page indicating that after the endorsement the remainder of the page was left blank." Def.'s Resp. 9. Plaintiffs offer no authority for their argument that the scribble that spilled onto the blank endorsement renders that endorsement a nullity, and an independent review shows no such rule.

Likewise unpersuasive is Plaintiffs' argument that "Defendant has never produced a copy of the Note that indicates to whom the Note was endorsed." Pls.' Objections 9. A blank endorsement is not endorsed to an identified person. Rather, as noted, "When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone." Mich. Comp. Laws § 440.3205; see, e.g., Fortson, 2012 WL 1183692, at *6 (E.D.Mich. Apr. 9, 2012; Ensign v. Fogg, 177 Mich. 317, 143 N.W. 82 (1913)).

In sum, because Plaintiff has defaulted on the loan, Defendant is in possession of the note endorsed in blank, and the assignment from the original mortgagee to Defendant is recorded in the land records, the Court will adopt Judge Binder's recommendation that count one of the complaint be dismissed. Plaintiffs objections will be overruled.

**B**

Plaintiffs next object to the recommendation that count two be dismissed. This count, titled "breach of contract," asserts that "prior to the commencement of foreclosure proceedings, there was a valid, binding Contract between the parties, requiring Defendant to send a permanent HAMP modification package with interest at the rate of 4.5%, and a monthly payment in the amount of $786.90." Compl. ¶ 62. It concludes, "Defendant has failed and/or refused to honor the terms of the contract." Id. ¶ 64.

Judge Binder reports that "Plaintiffs have conceded that there is no private cause of action under HAMP, and instead contend that they are suing U.S. Bank for entering into a contract to modify the loan, and then breaching the contract, after a course of performance by the parties." Report & Recommendation 14 (internal quotation marks omitted). Judge Binder recommends that count two be dismissed because Plaintiffs do not allege that the contract was properly executed:

> Plaintiffs contend that "prior to the commencement of foreclosure proceedings, there was a valid, binding Contract between the parties, requiring Defendant to send a permanent HAMP modification package with interest at the rate of 4.5% and a monthly payment in the amount of $786.90, to Plaintiffs via overnight mail, at the conclusion of their 'trial period.'" Plaintiffs contend that the modification contract with those terms should have been sent because they "performed their obligations under the Contract, including but not limited to completing and submitting all required forms, proofs and requested documentation to Defendants." However, Plaintiffs do not allege that such an agreement or contract was ever actually executed.

Id. at 15 (internal citations and footnote omitted) (quoting Compl. ¶ 62).

Plaintiffs object that "the Report erred in finding that Plaintiffs did not properly

allege the existence of a contract. Plaintiffs did so in Paragraph 62 of their Verified Complaint." Pls.' Objections 12 (internal citation omitted).

Defendant responds that Judge Binder's recommendation should be adopted because Plaintiffs allegations do not satisfy the statute of frauds—specifically, Plaintiffs "failed to demonstrate the existence of a signed [HAMP trial period plan] agreement." Def.'s Resp. 11. Defendant is correct.

■ In pertinent part, Michigan's statute of frauds establishes that loan modifications are not enforceable unless memorialized in a writing signed with an authorized signature by the financial institution:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution ... A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

Mich. Comp. Laws § 566.132(2)(b). Here, drawing all reasonable inferences in favor of Plaintiffs, they do not allege a written agreement. On the contrary, they implicitly acknowledge that their breach of contract claim is based on "oral promises." Pls.' Objections 12.

As noted, Plaintiffs' objection relies on paragraph 62 of the complaint, which asserts: "As more fully set forth in the Common Allegations ... prior to the commencement of foreclosure proceedings, there was a valid, binding Contract between the parties, requiring Defendant to send a permanent HAMP modification package with interest at the rate of 4.5%." Compl. ¶ 62. The "common allegations,"

in turn, demonstrate that there was not in fact a "valid, binding Contract between the parties." *See id.* ¶¶ 19–28.

Specifically, paragraph 20 alleges that "representatives of ASC advised Plaintiffs that they needed to complete an application to modify their loan." *Id.* ¶ 20. Paragraph 21 alleges that Plaintiffs did so. Paragraphs 21 through 27 report what (allegedly) happened next:

> A representative of ASC who identified himself as Robert Grant ... informed Plaintiffs that all they had to do to ensure the permanent modification of their loan was to make a payment in June, 2010 of $689, followed by five monthly installments of $786.90, and as long as those payments were made on time, the loan would be permanently modified....

> In November, 2010, on the final month of the trial period which ASC promised would lead to a permanent loan modification to 4.5% interest and a payment in the amount of $786.90, they were informed by Robert Grant that he "needed more information to finish up the loan modification," calling it "step two" in the process.

> It was at that point, for the first time, that Mr. Grant stopped calling the prior agreement a "trial period," and started calling it a "forbearance plan," which is a completely different kind of agreement.

> In February, 2011, ASC informed Plaintiffs that they were in fact approved for a permanent loan modification.

> Unfortunately, the modification was not what had been promised by ASC the prior year, as a means to induce Plaintiffs into the forbearance plan.

> Specifically, instead of a modification to 4.5%, the modification was only to 6.5%, and instead of a payment in the amount of $786.90, the payment would be $997,

and as if that wasn't bad enough, the agreement showed that as a result of the forbearance period, there was now a $5,000 arrearage.

Compl. ¶¶ 23–27 (emphasis omitted).

Accepting these allegations as true, the complaint does not allege an enforceable loan modification to 4.5 percent was memorialized in writing signed with an authorized signature by Defendant. Rather, the complaint alleges Mr. Grant told Plaintiffs that they needed to make five monthly payments and "called" this a trial period (in contrast to the "approved" agreement, which "showed" a modification of 6.5 percent).

Moreover, in their objections to Judge Binder's report, Plaintiffs acknowledge that "they are challenging the validity of a foreclosure based on ... the alleged oral promises to modify the loan." Pls.' Objections 12. Plaintiffs thus implicitly acknowledge that the alleged promises were oral, not written.

As the purported modification does not satisfy the statute of frauds, the Court will adopt Judge Binder's recommendation that count two of the complaint be dismissed. Plaintiffs' objections will be overruled.

## C

Plaintiffs next object to the recommendation regarding counts three through five of the complaint (promissory estoppel, intentional fraud, and constructive fraud), which Judge Binder also recommends be dismissed under the statute of frauds. Report & Recommendation 16–17.

Plaintiffs object that the statute does not apply to "oral promises to modify the loan," explaining: "[T]he statute only bars parties from seeking to 'enforce' oral contracts and is therefore inapplicable to this case. In other words, Plaintiffs are not seeking to 'enforce' the terms of an alleged oral promise to modify the loan. On the contrary, they are challenging the validity of a foreclosure based on, and would never have occurred without, the alleged oral promises to modify the loan." Pls.' Objections 12.

Plaintiffs' objection is unpersuasive. As a general matter, under Michigan law "the doctrine of promissory estoppel may not be applied to a statute of frauds case involving the sale of real estate." *Hazime v. Martin Oil of Ind., Inc.*, 792 F.Supp. 1067, 1069 (E.D.Mich. 1992) (Cohn, J.); *see also Tri–Mount/Preserves Bldg. Co., Inc. v. TCF Nat'l Bank*, No. 254077, 2005 WL 2445461, at *3 (Mich.Ct.App. Oct. 4, 2005) (unpublished) ("Plaintiffs have not cited any authority in support of their position that promissory estoppel can be applied to enforce an unwritten contract involving an interest in real property, in avoidance of the statute of frauds.... Further, it does not appear that Michigan law permits application of promissory estoppel in this context."). The Sixth Circuit (applying Ohio law) explains that the statute of frauds, designed to bring certainty to enumerated types of transactions, precludes a promissory estoppel claim:

> Real estate transactions are usually formal undertakings involving significant sums of money. Because they have the potential to affect the actions and interests of third parties, these transactions need to be made public. The statute of frauds is thus necessary to ensure that transactions involving a transfer of realty interests are commemorated with sufficient solemnity. A signed writing provides greater assurance that the parties and the public can reliably know when such a transactions occurs. It supports the public policy favoring clarity in determining real estate interests and dis-

courages indefinite or fraudulent claims about such interests.

*Seale v. Citizens Savings & Loan Assoc.,* 806 F.2d 99, 104 (6th Cir.1986) (internal quotation marks omitted) (quoting *North Coast Cookies, Inc. v. Sweet Temptations, Inc.,* 16 Ohio App.3d 342, 476 N.E.2d 388 (Ohio Ct.App.1984)); *see also Indus. Maxifreight Servs., LLC v. Tenneco Auto. Operating Co., Inc.,* 182 F.Supp.2d 630, 633 (W.D.Mich.2002) (noting "the Court is of the firm conviction that Michigan courts would apply extra caution where the doctrine of promissory estoppel is invoked to circumvent the statute of frauds in the real estate context").

 Moreover, as the Michigan Court of Appeals has pointedly observed, promissory estoppel is a judicially-created doctrine. Applying it to circumvent the statute of frauds would be "contrary to well-founded principles of statutory construction and is inconsistent with traditional notions of the separation of powers between the judicial and legislative branches of government." *Crown Tech. Park v. D & N Bank, FSB,* 242 Mich.App. 538, 619 N.W.2d 66, 71 n. 4 (Mich.Ct.App.2000) (citing Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 14–29 (1997)). That is, the judiciary is obliged to defer to the policy choices of the legislature:

> Promissory estoppel is a judicially created doctrine that was developed as an equitable remedy applicable in common-law contract actions. Unlike a traditional common-law contract claim or defense, the statute of frauds is legislatively mandated. Thus, such contracts must be reduced to writing.... The Michigan Legislature has determined that, for those contracts specifically identified in the statute of frauds, it is important to

provide certainty and to avoid controversy over the terms of alleged contracts. *Id.*

This logic applies with equal force to Plaintiffs' intentional and constructive fraud claims. In count four, Plaintiffs assert that "agents of Defendant have made very explicit promises, in no uncertain terms, that [Plaintiffs] would be granted a permanent modification under HAMP, with interest at 4.5% and a payment in the amount of $786.90." Compl. ¶ 74. This conduct was intentionally fraudulent, Plaintiffs assert, because "Defendants knew that the representations were untrue at the time they were made, in that they had no intention of *ever* placing Plaintiffs into a permanent home loan modification under RAMP." *Id.* ¶ 79. Pleading in the alternative, Plaintiffs further allege that "Defendant made the representations set forth in Count 4 above without a purposeful design to defraud Plaintiffs. Nevertheless, the representations were false and induced Plaintiffs to participate in the transaction." *Id.* ¶¶ 86–87.

 As noted, Michigan's statute of frauds establishes that to be enforceable loan modifications must be in writing and signed. Mich. Comp. Laws § 566.132(2)(b) (quoted above). "This language is unambiguous. It plainly states that a party is precluded from bringing a claim—no matter its label—against a financial institution to enforce the terms of an oral promise to waive a loan provision." *Crown Tech.,* 619 N.W.2d at 72; *Loeffler v. BAC Home Loans Servicing,* No. 11–cv–13711, 2012 WL 666750, at *5 (E.D.Mich. Feb. 29, 2012) (unpublished) ("Plaintiff's claims for misrepresentation and fraud are explicitly barred by Michigan's Statute of Frauds and will be dismissed."). As Judge Paul Borman recently observed, "Courts in this District have repeatedly held that misrepresentation claims based on alleged prom-

ises to modify home mortgages are barred by the Michigan Statute of Frauds." *Id.* (citing *Jarbo v. BAC Home Loan Servicing*, No. 10–12632, 2010 WL 5173825, *11 (E.D.Mich. Dec. 15, 2010) (unpublished) (Edmunds, J.); *Bingham v. Bank of Am.*, No. 10–11917, 2010 WL 3633925, *2–3 (E.D.Mich. Sept. 14, 2010) (unpublished) (Cox, J.); *Ajami v. IndyMac Mortg. Servs.*, No. 09–13488, 2009 WL 3874680, *2 (E.D.Mich. Nov. 13, 2009) (unpublished) (Cohn, J.)).

Plaintiffs' claims for promissory estoppel, intentional fraud, and constructive fraud are barred by the statute of frauds. Accordingly, the Court will adopt Judge Binder's recommendation that counts three, four, and five be dismissed. Plaintiffs' objections will be overruled.

### D

Finally, Plaintiffs object to the recommendation regarding counts eleven and twelve of the complaint. Count eleven asserts that "Defendant has engaged in multiple violations of the Fair Debt Collection Practices Act against Plaintiffs." Compl. ¶ 114. Count twelve asserts a claim under the Michigan state counterpart. Judge Binder recommends that the Court dismiss these claims because Defendant is not a debt collector. Report and Recommendation 21. He notes that "a creditor is not a debt collector under the FDCPA ... [n]or is the assignee of a debt that was not in default at the time it was assigned." *Id.* (quoting *Joyner v. MERS*, 451 Fed.Appx. 505, 507 (6th Cir.2011)).

Plaintiffs object that "because Ownit and MERS did not have the authority to assign the Note to Defendant for the reasons stated above, Defendant was not collecting on its own debt. Therefore, because Defendant was not collecting on its own debt, Defendant was acting as a debt collector

within the meaning of the FDCPA and Michigan's statute." Pls.' Objection 14.

As detailed above, Plaintiffs are incorrect that "MERS did not have the authority to assign the Note to Defendant." Plaintiffs' objection will be overruled.

### IV

Accordingly, it is **ORDERED** that Plaintiffs' objections to Judge Binder's report and recommendation (ECF No. 11) are **OVERRULED.**

It is further **ORDERED** that the Judge Binder's report and recommendation (ECF No. 10) is **ADOPTED.**

It is further **ORDERED** that Defendant's motion to dismiss (ECF No. 3) is **GRANTED.**

*MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT* (Doc. 3)

CHARLES E. BINDER, United States Magistrate Judge.

### I. *RECOMMENDATION*

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion be **GRANTED** and the case be dismissed in its entirety with prejudice.

### II. *REPORT*

#### A. Introduction

This action was removed from the Midland County Circuit Court, State of Michigan, on November 1, 2011. Plaintiffs' complaint alleges the following claims: (1) invalid assignments—no proof of ownership of loan/authority to foreclose under Mich. Comp. Laws § 600.3204; (2) breach of contract for a HAMP loan modification; (3) promissory estoppel; (4) intentional fraud; (5) constructive fraud; (6) unjust enrichment; (7) violation of the Truth in

Lending Act ("TILA") under 15 U.S.C. § 1639, *et seq.;* (8) declaratory relief—foreclosure barred by unclean hands; (9) breach of contract—implied duty of good faith and fair dealing; (10) violation of Michigan's Brokers, Lenders, and Servicers Licensing Act under Mich. Comp. Laws § 445.1672; (11) violation of the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692g; and (12) violation of the Michigan Occupational Code ("MOC") under Mich. Comp. Laws § 339.918.[1] (Doc. 1.) These claims all relate to the circumstances surrounding a mortgage loan, alleged modifications thereto, and the published notice of foreclosure sale of Plaintiffs' home, which was first published on July 13, 2011, notifying that the foreclosure sale would commence on October 25, 2011. (Doc. 1 at Ex. F.) Contemporaneously with the complaint, Plaintiffs filed for an *ex parte* temporary restraining order ("TRO") to prevent the foreclosure sale from occurring on October 25, 2011. It appears that a Midland County Circuit Court judge granted the TRO and scheduled a hearing on the motion for preliminary injunction for November 2, 2011. (Doc. 1 at Ex. A.) Before the hearing was held, on November 1, 2011, Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. (Doc. 1 at 5.)

On November 14, 2011, Defendant filed the instant dispositve motion. (Doc. 3.) Plaintiffs filed a response on February 27, 2012 (Doc. 6), and Defendant filed a reply on March 5, 2012. (Doc. 9.) Having considered the documents submitted by the parties, the Court is satisfied that it would not be assisted by oral argument on the motion. Therefore, in accordance with the local rules, the motion is ready for report and recommendation. E.D. Mich. LR 7.1(f)(2).

## B. Factual Background

Plaintiffs' property is commonly known as 1784 S. Five Mile Road, Midland, Michigan (the "property"). (Doc. 1 at 21.) Plaintiffs entered into the subject mortgage and related promissory note on September 1, 2005, in which Ownit Mortgage Solutions, Inc., ("Ownit") was described as the "Lender" and Mortgage Electronic Registration Systems, Inc., ("MERS") as the "mortgagee" and "nominee for Lender and Lender's successors and assigns." (Doc. 1 at Ex. A; Doc. 3 at Ex. 1.) The promissory note signed by Plaintiffs on the same day stated that Plaintiffs owed Lender (Ownit) $120,000.00 plus interest. (Doc. 3, Ex. 1 at 2.)

On July 12, 2006, MERS, "as nominee for Lender and Lender's assigns," assigned the mortgage to Defendant. (Doc. 3 at Ex. 2.) This assignment was recorded with the Midland County Register of Deeds on July 17, 2006. (*Id.*) Plaintiffs allege that this assignment was invalid because "MERS is not the true mortgagee and any valid Assignment would have to come from Ownit, and further ... the person who executed the same was not an agent or employee of MERS, but merely an attorney from the foreclosing law firm of Trott & Trott." (Doc. 1 at 22.)

Plaintiffs contend that, in March 2010, they contacted America's Servicing Company ("ASC"), which was "holding itself out as Plaintiffs' morgagee and/or servicing agent" despite the fact that Ownit appeared to be the owner of the mortgage according to the register of deeds and Defendant was "holding itself out, pursu-

---

1. Although Plaintiffs refer to this section as the Michigan Debt Collection Practices Act in their complaint, the citation is actually to Michigan's Occupational Code's collection practices sections. (Doc. 1 at 43.)

ant to a bogus Assignment" as the owner of the mortgage. (Doc. 1 at 24.) In April 2010, ASC representatives advised Plaintiffs they needed to complete an application to modify their loan. Plaintiffs provided the requested documentation, and in May 2010, ASC representatives told Plaintiffs their loan would be permanently modified from a 7.875% rate to a 4.5% rate, which would decrease their monthly payment from $1,057.00 to $786.90. (Doc. 1 at 24.) Plaintiffs were instructed to make a payment of $689.00 in June 2010 and make monthly payments of $786.90 in July through November 2010. Plaintiffs were told that "as long as those payments were made on time, the loan would be permanently modified to $786.90 per month, based on an interest rate of 4.5%." (Doc. 1 at 24.)

In November 2010, however, ASC's agent, Robert Grant, "stopped calling the prior agreement a 'trial period,' and started calling it a 'forbearance plan,' which is a completely different kind of agreement." (Doc. 1 at 24.) In February 2011, ASC informed Plaintiffs that they were approved for a permanent loan modification with an interest rate of 6.5%, which would result in a monthly payment of $997.00. (Doc. 1 at 25.) The modification agreement also noted that a $5,000 arrearage accumulated during the "forbearance period" would be added back into the loan amount. (Doc. 1 at 25.)

Plaintiffs aver that "[i]n the meantime, Defendant must have known that the 1st Assignment was invalid because on June 16, 2011, yet another Assignment of Mortgage was prepared." (Doc. 1 at 26 (emphasis omitted).) On June 16, 2011, MERS, "as nominee for Ownit . . . its successors and assigns" assigned the mortgage to Defendant. (Doc. 3 at Ex. 3.) This assignment was recorded with the Midland County Register of Deeds on June 20, 2011. (*Id.*) Plaintiffs contend that this assignment was also invalid because "MERS is not the true mortgagee and any valid assignment would have to come directly from Ownit, which at this point had ceased to exist . . . and for the reason that the person who executed the same was not an agent or employee of MERS . . . but merely an employee of Wells Fargo Home Mortgage, which is a complete stranger to the transaction at issue." (Doc. 1 at 26–27 (emphasis omitted).) Plaintiffs further contend that the Wells Fargo employees who signed the second assignment were "known fraudulent robo-signers." (*Id.* at 27.)

Defendant commenced foreclosure proceedings on July 13, 2011, indicating that the property would be sold at auction on October 25, 2011. (Doc. 1 at 27.) As stated above, Plaintiffs' motion for TRO was apparently granted by the Midland County Circuit Court and a hearing on the motion for preliminary injunction was set for November 2, 2011. (Doc. 1 at Ex. A.) Before the hearing was held, Defendant removed the case to this Court. (Doc. 1 at 5.)

Defendant's notice of removal indicated that "Plaintiffs currently are due on their mortgage loan for November 1, 2010. They have an unpaid balance in the amount of $119,845.24 [and] Defendant has made escrow advances in the amount of $478.36." (Doc. 1 at 6.) Defendant further contended that despite their default on the loan, Plaintiffs were seeking to block collection and "through judicial means . . . force a modification of their loan." (*Id.*)

## C. Motion Standards

Defendant moves for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment pursuant to Rule 56(c). Most of the claims are analyzed under the

motion to dismiss standards; however, the summary judgment standards are used for analyzing claims brought in Counts 1 and 2.

When deciding a motion to dismiss, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir.2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587–88, 106 S.Ct. 1348. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326, 106 S.Ct. 2548.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Instead, the nonmoving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479–80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir.1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the nonmoving party: seeking out facts, develop-

ing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### D. Analysis & Conclusions

#### 1. Invalid Assignments & Invalid Foreclosure Claims

Defendant contends that Plaintiffs' mortgage was properly foreclosed and, thus, that the foreclosure by publication statute, Mich. Comp. Laws § 600.3204, was not violated. (Doc. 3 at 12–14.) In addition, Defendant argues that Plaintiffs lack standing to challenge the validity of the mortgage assignment. (Doc. 3 at 13.)

#### a. The Assignment

I suggest that Defendant correctly asserts that Plaintiffs lack standing to challenge the validity of the assignment. In *Livonia Properties Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC,* 399 Fed.Appx. 97 (6th Cir.2010), the Sixth Circuit held that "even if there were a flaw in the assignment, [the plaintiff]

does not have standing to raise that flaw ... [because] there is ample authority to support the proposition that 'a litigant who is not a party to an assignment lacks standing to challenge that assignment.' " *Id.* at 102 (citations omitted); *accord Thomas v. Mortgage Elec. Reg. Sys., Inc. (MERS ),* No. 11–15670, 2012 WL 834688, at *5 (E.D.Mich. Mar. 13, 2012) ("Plaintiff, as a non-party, cannot collaterally attack the MERS/U.S. Bank assignment"); *Shumake v. Deutsche Bank Nat'l Trust Co.,* No. 1:11–cv–353, 2012 WL 366923 (W.D.Mich. Feb. 2, 2012) (holding that the plaintiff lacked standing to challenge an assignment from Chase to Deutsche Bank because his injury was not fairly traceable to the assignment and the assignment, standing alone, did not cause him any injury).

██ Even if Plaintiffs did have standing to challenge the assignments, I suggest that the result would be the same. As cited by Defendant, *Bakri v. Mortgage Elec. Reg. Sys. (MERS),* No. 297962, 2011 WL 3476818, at *4 (Mich.App. Aug. 9, 2011), held that an assignment from MERS to New York Mellon was valid where the mortgage named MERS as nominee for the lender (and the lender's successors and assigns) because, as nominee, MERS had the power to assign the mortgage to New York Mellon.[2] Here, the mortgage also provided that MERS was "nominee for Lender and Lender's successors and assigns" and that MERS was the "mortgagee under this Security Instrument." (Doc. 3, Ex. 1 at 2, 4.) Therefore, I suggest that MERS possessed the authori-

---

2. I note, however, that the *Bakri* analysis regarding the foreclosure by advertisement statute is no longer viable. *See Residential Funding Co., LLC v. Saurman,* 490 Mich. 909, 805 N.W.2d 183 (2011) (reversing court of appeal opinion relied upon in *Bakri* ); *Bowden v. American Home Mortgage Servicing, Inc.,* No. 10–12972, 2012 WL 628543, at *7 (E.D.Mich. Feb. 27, 2012) ("*Saurman* and, by extension, *Bakri,* were reversed by the Michigan Supreme Court"); *Luster v. Mortgage Elec. Reg. Sys. (MERS ),* No. 1 1–cv–14166, 2012 WL 124967 (E.D.Mich. Jan. 17, 2012) (Michigan Supreme Court's reversal in *Saurman* also "*sub silentio* reversed another Court of Appeals decision, *Bakri*" ).

ty to assign the mortgage to Defendant. This result is consistent with Michigan law holding that contractual rights can generally be assigned unless assignment is clearly restricted. *See Talton v. BAC Home Loans Serv. LP,* No. 11–14512, 839 F.Supp.2d 896, 904, 2012 WL 855975, at *6 (E.D.Mich. Mar. 7, 2012) (citing *Burkhardt v. Bailey,* 260 Mich.App. 636, 680 N.W.2d 453, 462 (Mich.Ct.App.2004)).

Plaintiffs also contend that the assignments were invalid because they were not signed by authorized agents. As to the first assignment, Plaintiffs contend that person who executed the document was not an agent or employee of MERS, but rather an attorney from the Trott & Trott law firm. (Doc. 1 at 22.) As to the second assignment, Plaintiffs aver that the person who executed the document was not an agent or employee of MERS, but rather was an employee of Wells Fargo Home Mortgage; Plaintiffs also allege that the witnesses to the second assignment were "known fraudulent robo-signers." (Doc. 1 at 27.)

It is unclear which assignment Defendant relies on to assert its authority to foreclose. Defendant appears to rely on the first assignment in July 2006 (Doc. 3 at 13; Ex. 2); however, Defendant provides evidence that the persons executing both the first and second assignments had authority to do so on behalf of MERS pursuant to an agreement for signing authority and a corporate resolution relevant to the authority of the persons executing the 2006 and 2011 assignments, respectively. (Doc. 3 at Ex. 6, 7.) Plaintiffs have not come forward with any evidence refuting the authority of the persons executing the assignments. Therefore, I suggest that even if Plaintiffs had standing to challenge the assignments, summary judgment would still be appropriate. I further suggest that even if the witnesses to the

assignment(s) were robo-signers, that allegation is of no legal consequence. *See Assasepa v. JPMorgan Chase Bank,* No. 1:11–cv–156, 2012 WL 88162, at *8 (S.D.Ohio Jan. 11, 2012) (bare allegation that robo-signers were used to sign documents was insufficient to state a claim of fraud); *accord Cerecedes v. U.S. Bankcorp.,* No. 11–219 CAS, 2011 WL 2711071, at *5 (C.D.Cal. July 11, 2011). As a result, I suggest that even if Plaintiffs had standing to challenge the validity of the assignments, the claim would fail.

### b. Defendant's Authority to Foreclose by Advertisement

Since I suggest that the assignment to Defendant is unassailable by the Plaintiffs who lack standing or, in the alternative, that the assignment was proper, the question then becomes whether Defendant, as assignee, possessed the authority to foreclose by advertisement under the relevant Michigan statute. (Doc. 1; Doc. 6 at 9–15.)

I suggest that Defendant's authority to foreclose (whether by advertisement or judicial proceeding) is established first in the language of the mortgage. The instant mortgage granted MERS a right to exercise its interests, including the right to foreclose and sell the property. (Doc. 3, Ex. 1 at 4.) Michigan law also provides that once rights are assigned, the assignee stands in the same position as the assignor. *See Talton, supra.* I therefore suggest that once the assignment was made from MERS to Defendant, Defendant stood in the shoes of MERS and possessed all the rights and authority given to MERS, including the right to foreclose. (Doc. 3, Ex. 1 at 4.)

I further suggest that Defendant's authority to foreclose by advertisement is found in the relevant Michigan statute. At the time the foreclosure proceedings were

commenced and the sale was scheduled (July through October of 2011), the statute provided: [3]

(1) Subject to subsection (4), a party may foreclose a mortgage by advertisement if all of the following circumstances exist:

(a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.

(b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage . . .

(c) The mortgage containing the power of sale has been properly recorded.

(d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

. . . .

(3) If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record of chain of title shall exist prior to the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage.

(4) A party shall not commence proceedings under this chapter to foreclose a mortgage of property described in section 3205a(1) if 1 or more of the following apply:

(a) Notice has not been mailed to the mortgagor as required by section 3205a.

(b) After a notice is mailed to the mortgagor under section 3205a, the time for a housing counselor to notify the person designated under section 3205a(1)(c) of a request by the mortgagor under section 3205b(1) has not expired.

(c) Within 14 days after a notice is mailed to the mortgagor under section 3205a, the mortgagor has requested a meeting under section 3205b with the person designated under section

3. Of the portions cited herein, only subsection (4) was modified effective December 22, 2011. Subsection (4) currently provides:

A party shall not commence proceedings under this chapter to foreclose a mortgage of property claimed as a principal residence . . . if 1 or more of the following apply:
(a) Notice has not been mailed to the mortgagor as required by section 3205a.
(b) After a notice is mailed to the mortgagor under section 3205a, the time for the mortgagor to request, either directly or through a housing counselor, a meeting with the person designated under section 3205a(1)(c) under section 3205b has not expired.
(c) Within 30 days after a notice is mailed to the mortgagor under section 3205a, the mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c) and 90 days have not passed after the notice was mailed. This subdivision does not apply if the mortgagor has failed to provide documents as required under section 3205b(2).

(d) Documents have been requested under section 3205(b) and the time for producing the documents has not expired.
(e) The mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c), the mortgagor has provided documents as required under section 3205b(2), and the person designated under section 3205a(1)(c) has not met or negotiated with the mortgagor under this chapter.
(f) The mortgagor and mortgagee have agreed to modify the mortgage loan and the mortgagor is not in default under the modified agreement.
(g) Calculations under section 3205c(1) show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7).
Mich. Comp. Laws § 600.3204(4) (effect. Dec. 22, 2011).

3205a(1)(c) and 90 days have not passed after the notice was mailed.

(d) The mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c), the mortgagor has provided documents if requested under section 3205b(2), and the person designated under section 3205a(1)(c) has not met or negotiated with the mortgagor under this chapter.

(e) The mortgagor and mortgagee have agreed to modify the mortgage loan and mortgagor is not in default under the modified agreement.

(f) Calculations under section 3205c(1) show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7).

Mich. Comp. Laws § 600.3204.

"Mortgage holder" is defined as "the owner of the indebtedness or of an interest in the indebtedness that is secured by the mortgage." Mich. Comp. Laws § 600.3205(b).[4] "Mortgage servicer" is defined as "the servicing agent of the mortgage." Mich. Comp. Laws § 600.3205(c).[5]

▆▆▆ As indicated above, subsection (1)(d) of section 3204 requires that the "party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." Although a Michigan Court of Appeals decision held that MERS, as nominee for the lender, could not meet the requirements of Mich. Comp. Laws § 600.3204 because it did not have any interest in the promissory note, *Residential Funding Co. LLC v. Saurman,* 292 Mich.App. 321, 807 N.W.2d 412 (Mich.Ct. App.2011), the Michigan Supreme Court

summarily reversed the decision in lieu of granting appeal. *Residential Funding Co., L.L.C. v. Saurman,* 490 Mich. 909, 805 N.W.2d 183 (Mich.2011). The Michigan Supreme Court expressed its concurrence with the dissenting opinion in the Court of Appeals' decision and stated:

> We clarify, however that MERS' status as an "owner of an interest in the indebtedness" does not equate to an ownership interest in the note. Rather, as recordholder of the mortgage, MERS owned a security lien on the properties, the continued existence of which was contingent upon satisfaction of the indebtedness. This interest in the indebtedness—i.e., the ownership of legal title to a security lien whose existence is wholly contingent on the satisfaction of the indebtedness—authorized MERS to foreclose by advertisement under MCL 600.3204(1)(d).
>
> Furthermore, we add that the Court of Appeals' conclusion to the contrary is inconsistent with established legal principles governing Michigan's real property law, and specifically foreclosure by advertisement. "Under the settled law of this State, the mortgage and the note are to be construed together."

*Residential Funding,* 805 N.W.2d at 183 (citation omitted). Similarly, in the instant case, Defendant, as assignee, acquired all the rights and interests that MERS had under the mortgage. MERS was the "mortgagee" and the Lender Ownit's "nominee for Lender and Lender's assigns," but since MERS had no interest in the promissory note, Defendant acquired no interest in the promissory note. (Doc. 3 at Ex. 1.) If the interpretation given by the Michigan Court of Appeals in *Saurman* still governed, Plaintiffs may have

---

4. This definition was unchanged by the December 22, 2011, amendments.

5. This definition was unchanged by the December 22, 2011, amendments.

had a viable claim. However, the Michigan Supreme Court has made clear that the absence of an interest in the promissory note will not otherwise divest a party with a record lien—i.e., a mortgage interest in the property—of the right to foreclose on that property by advertisement.

Here, the evidence shows that at the time of the sale, Defendant was the record holder of the mortgage[6] on Plaintiffs' property (Doc. 3 at Ex. 3) and, thus, was authorized to foreclose by advertisement. Mich. Comp. Laws § 600.3204(1)(d), (3); *Yunanova v. BAC Home Loans Servicing, LP*, No. 2:10–cv–14156, 2012 WL 441161, at *5 (E.D.Mich. Feb. 10, 2012) (dismissing claim under Mich. Comp. Laws § 600.3204 where MERS assigned mortgage to Wells Fargo and Wells Fargo commenced foreclosure).[7]

I therefore suggest that Defendant's motion for summary judgment should be granted as to these claims.

## 2. Breach of Contract Claim

Defendant argues that Plaintiffs' breach of contract claim for a Home Affordable Modification Program ("HAMP") loan modification should be dismissed because no private cause of action exists under HAMP. HAMP is a series of Treasury Supplemental Directives that the Department of Treasury was authorized to issue under the foreclosure mitigation and loan modification portions of the Troubled Assets Relief Program ("TARP"), which, in turn, is part of the Emergency Economic Stabilization Act ("EESA"). 12 U.S.C. §§ 5211, 5219a, 5219b.[8]

In *Brown v. Bank of New York Mellon*, No. 1:10–cv–550, 2011 WL 206124 (W.D.Mich. Jan. 21, 2011), the court dismissed the plaintiff's "Breach of Contract (HAMP)" claim, noting that "[a]ll of the district courts that have considered the issue have held that homeowners do not have a private right of action under HAMP for denial of a loan modification." *Id.* at *2 (collecting cases). Thus, I suggest that Defendant is entitled to judgment on this claim.

As Defendant noted in its reply brief, Plaintiffs have conceded that there is no private cause of action under HAMP, and instead contend that they are "suing U.S. Bank for entering into a contract to modify the loan, and then breaching the contract, after a course of performance by the parties." (Doc. 6 at 15; Doc. 9 at 3.)

There is authority supporting the notion that breach of contract claims based on Trial Period Plan ("TPP") agreements should be allowed to proceed despite the fact that HAMP provides no private cause of action, but there is also authority to the contrary. *See Senter v. JPMorgan Chase Bank, NA*, 810 F.Supp.2d 1339, 1353 (S.D.Fla.2011) (collecting cases, including

---

6. To be the record holder of the mortgage, Defendant needed to record its mortgage interest before the scheduled date of sale, which it did. *See* Mich. Comp. Laws § 600.3204(3); *Kim v. JPMorgan Chase Bank*, 295 Mich.App. 200, 813 N.W.2d 778 (2012); (Doc. 3 at Ex. 2, 3).

7. I note that this result is not undermined by Plaintiff's allegation that the Ownit "went out of business shortly after taking Plaintiffs' hard earned money." (Doc. 1 at 25.) Defendant contends that although Ownit stopped doing business in Michigan in 2008, it continued to exist. (Doc. 9 at 2–3, n. 2.) I suggest that Ownit's status is legally irrelevant to Defendant's authority to foreclose by advertisement. *See Talton*, 839 F.Supp.2d at 907–08 (fact that promissory note holder ceased to exist prior to foreclosure was not relevant to MERS' authority to foreclose on the mortgage).

8. The directives are available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer.

*Brown, supra*).[9] In Brown, the plaintiff had responded to the defendant's motion for summary judgment in the same manner as the instant case: by alleging that her claim arose not from HAMP but rather from common law contractual principles. *See Brown*, at 1308–09. The court noted, however, that the plaintiff's "argument does not track the allegations in her complaint" because the "only agreement Plaintiff alleges in Count III is the HAMP agreement." *Id.* at 1309. Since the TPP agreement expressly stated that it was not a modification and thus "did not guarantee that Plaintiff's loan documents would be modified[,]" the court found that the plaintiff failed to state a claim for breach of contract. *Id.*

Similarly, in the instant case, Plaintiffs contend that "prior to the commencement of foreclosure proceedings, there was a valid, binding Contract between the parties, requiring Defendant to send a permanent HAMP modification package with interest at the rate of 4.5% and a monthly payment in the amount of $786.90, to Plaintiffs via overnight mail, at the conclusion of their 'trial period.'" (Doc. 1 at 31.) Plaintiffs contend that the modification contract with those terms should have been sent because they "performed their obligations under the Contract, including but not limited to completing and submitting all required forms, proofs and requested documentation to Defendants." (*Id.*) However, Plaintiffs do not allege that such an agreement or contract was ever

actually executed.[10] I therefore suggest that Plaintiffs have failed to state a claim for breach of contract and that Defendant's motion could be granted on this ground alone.

Furthermore, even if Plaintiffs' complaint could be read to state a claim for breach of contract, I suggest that Defendant's motion for summary judgment should be granted because of Plaintiffs' failure to come forward with any evidence that an agreement was actually reached or that a consummated contract actually existed. *See Anderson, supra.* Plaintiffs' complaint avers that "ASC representatives told Plaintiffs their loan would be permanently modified from a 7.875% to a 4.5%[,]" but several months later ASC's agent, Robert Grant, "stopped calling the prior agreement a 'trial period,' and started calling it a 'forbearance plan.'" (Doc. 1 at 24.) However, Plaintiffs have provided no documentation, deposition testimony, or affidavits to support these allegations. More importantly, Plaintiffs' responsive brief to Defendant's motion fails to provide any evidence in support of their claim that a TPP agreement, loan modification agreement, or any agreement whatsoever existed between Plaintiff and Defendant or Defendant's agent. When challenged by a motion for summary judgment, this failure to come forward with evidence supporting their claim is fatal. *See Anderson, supra.* I therefore suggest that Defendant's motion for summary judgment be granted on the HAMP or breach of contract claim.[11]

**9.** Other cases in the federal courts in Michigan include: *Bolone v. Wells Fargo Home Mort., Inc.*, No. 11–10663, 858 F.Supp.2d 825, 831, 2012 WL 882894, at *4 (E.D.Mich. Mar. 14, 2012) (holding that HAMP did not preempt state-law breach of contract claim based on breach of TPP plan); *Darcy v. CitiFinancial*, No. 10–cv–848, 2011 WL 3758805, at *5 (W.D.Mich. Aug. 25, 2011) (holding that HAMP did not preempt state-law breach of contract claim based on breach of TPP plan,

finding language in written TPP plan ambiguous and thus denying summary judgment).

**10.** According to Plaintiffs' averments, a permanent loan modification was made at the higher interest rate of 6.5% in February 2011. (Doc. 1 at 25.)

**11.** Plaintiffs did not assert any claims arising under Michigan's mortgage loan modification statute. Interestingly, at the time the foreclo-

### 3. Claims of Promissory Estoppel, Intentional Fraud, and Constructive Fraud

Defendant contends that Plaintiffs' claims for promissory estoppel (Count 3) and for fraud (Counts 4 and 5) should be dismissed under the statute of frauds. Mich. Comp. Laws. § 566.132. Defendant further contends that Plaintiffs have not produced any agreement, or even alleged that one exists, that was signed by an authorized representative of Defendant agreeing to permanently modify their loan at 4.5%. (Doc. 1 at 24; Doc. 3 at 16; Doc. 9 at 11.)

The statute of frauds provides, in pertinent part, that:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> > A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
> >
> > A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

Mich. Comp. Laws § 566.132(2)(b)-(c). Plaintiffs have not provided a document with an authorized signature that modified the loan or waived any of the mortgage's provisions. I therefore suggest that Defendant is entitled to judgment on the pleadings with regard to all three of these claims. *See Loeffler v. BAC Home Loans*

*Servicing, L.P.,* No. 11–cv–13711, 2012 WL 666750 (E.D.Mich. Feb. 29, 2012) (citing *Crown Tech. Park v. D & N Bank, FSB,* 242 Mich.App. 538, 619 N.W.2d 66 (Mich. Ct.App.2000)) ("This language is unambiguous [and] plainly states that a party is precluded from bringing a claim—no matter its label—against a financial institution to enforce the terms of an oral promise to waive a loan provision.").

 I further suggest that even if the statute of frauds did not preclude the claims, Plaintiffs' fraud claims should also be dismissed for failure to meet the special pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure. Under this rule, a plaintiff must: "(1) specify the statements that [they] contend [ ] were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.,* 547 F.3d 564, 569–70 (6th Cir.2008). Although Plaintiffs' complaint gives a loose time frame of between April and June of 2010, and also mentions November of 2010, it fails to identify the alleged speakers until the complaint states that a "representative of ASC [ ] identified himself as Robert Grant" in June 2010. (Doc. 1 at 24.) Prior to the identification of Robert Grant, the complaint refers only to "representatives" of ASC or "ASC." (*Id.*) In addition, the complaint fails to indicate whether these alleged statements were made orally or in writing, where they were made or how the alleged statements were fraudulent. (Doc. 1 at 24.) Plaintiffs' passing reference to the fact that Robert Grant "stopped calling the prior agreement a 'tri-

---

sure was commenced, July 13, 2011, through the time in which the property was scheduled to be sold, October 25, 2011, several loan modification provisions had been repealed and no other provisions took their place until December 22, 2011. Mich. Comp. Laws

§ 600.3205e (Mich. Comp. Laws § 600.3205a to 3205d were repealed two years after the effective date of the amendatory act that added the section, i.e., on July 5, 2011); Mich. Comp. Laws § 600.3204(4) (eff. December 22, 2011).

al period,' and started calling it a 'forbearance plan,' which is a completely different kind of agreement" is not sufficient to explain how the alleged statements were fraudulent. (Doc. 1 at 24.)

I therefore suggest that Rule 9(b) provides an alternative ground supporting the grant of Defendant's motion to dismiss Plaintiffs' fraud claims. *See Jarbo v. BAC Home Loan Servicing,* No. 10–12632, 2010 WL 5173825, at *11–12 (E.D.Mich. Dec. 15, 2010) (finding negligent, innocent, and fraudulent misrepresentation claims were barred by the statute of frauds because they were based on the plaintiff's attempt to enforce oral promises to waive a provision of a loan or modify repayment and alternatively; the plaintiff's complaint failed to allege specificity required under Rule 9(b) to state a claim for fraud where it alleged the defendants inflated various figures on the loan application).

### 4. Unjust Enrichment Claim

■■■■ Defendant argues that Plaintiffs' claim for unjust enrichment should be dismissed because it is barred by the parties' contract. I suggest that Defendant is correct. "In order to sustain a claim of unjust enrichment, plaintiff must establish (1) the receipt of a benefit by defendant from plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. Detroit,* 256 Mich.App. 463, 666 N.W.2d 271, 280 (Mich.Ct.App.2003). Once established, the court will imply a contract to avoid unjust enrichment. *Id.* "However, 'a contract will be implied only if there is no express contract covering the same subject matter,'" so where, as here, there is "an express contract" such as "loan agreements," "[t]his alone would foreclose plaintiff's unjust enrichment claim." *Fodale v. Waste Mgmt. of Mich., Inc.,* 271 Mich.App. 11, 718 N.W.2d 827,

841 (Mich.Ct.App.2006); *accord Soto v. Wells Fargo Bank, N.A.,* No. 11–14064, 2012 WL 113534, at *9 (E.D.Mich. Jan. 13, 2012). I therefore suggest that Defendant's motion to dismiss Plaintiffs' unjust enrichment claim should be granted.

### 5. TILA Violation Claim

■■■■ Defendant contends that Plaintiffs' TILA claims should be dismissed as time barred since the instant loan originated in 2005. Plaintiffs' response does not address the TILA claim. (Doc. 6.) "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Dillery v. City of Sandusky,* 398 F.3d 562, 569 (6th Cir.2005); *accord Gray v. Nationstar Mort., LLC,* No. 10–14375, 2012 WL 359764, at *4 (6th Cir. Feb. 2, 2012) ("Plaintiffs do not address this provision in their response brief and thus the Court assumes they are abandoning this part of their claim."). I suggest that Defendant's motion could be granted on this ground alone.

■■■■ Even if the merits are addressed, I suggest that the result would be the same. Under TILA, any private cause of action must be brought "within one year from the date of the occurrence of the violation" or "no later than three years after the date on which the violation occurs" when the action is "brought by the appropriate State attorney general[.]" 15 U.S.C. § 1640. The instant complaint was filed in the Midland County Circuit Court on October 24, 2011. (Doc. 1 at 5, 13.) Plaintiffs allege a violation of TILA based upon the "'practice of extending credit to consumers under mortgages ... without regard to the consumers' repayment ability ....'" (Doc. 1 at 37) (citing 15 U.S.C. § 1639(h).) Thus, Plaintiffs' claim is based upon the original mortgage loan and not upon the alleged subsequent loan modifica-

tion issues. Consequently, I suggest that the relevant date for purposes of TILA is the original mortgage loan date, i.e., September 1, 2005. (Doc. 3 at Ex. 1.) Using this date, Plaintiffs' action is clearly time barred as it falls outside the one (and even the three) year limitation periods. I therefore suggest that Defendant's motion to dismiss the TILA claim should be granted.

### 6. Claims for Declaratory Relief

Defendant argues that Plaintiffs' claims for declaratory relief, foreclosure barred by unclean hands, and implied duty of good faith and fair dealing should all be dismissed because they are not actionable under Michigan law.

 "[D]eclaratory relief is a remedy [ ], not a claim." *Mettler Walloon, L.L.C. v. Melrose Twp.*, 281 Mich.App. 184, 761 N.W.2d 293, 317 (Mich.Ct.App.2008) (citations omitted). Similarly, the doctrine of unclean hands is not a claim; rather the "clean-hands doctrine closes the doors of equity to one tainted with inequitableness or bad faith to the matter in which he or she seeks relief, regardless of the improper behavior of the defendant." *Richards v. Tibaldi*, 272 Mich.App. 522, 726 N.W.2d 770, 779 (Mich.Ct.App.2006). I therefore suggest that neither Plaintiffs' reference to declaratory relief nor to unclean hands provide Plaintiffs with any meritorious claim and that Defendant's motion to dismiss should be granted as to these alleged claims.

 In addition, Michigan law "does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing." *Fodale*, 718 N.W.2d at 841. I therefore suggest that Defendant's motion to dismiss should be granted on this ground as well.

### 7. Brokers, Lenders, and Servicers Licensing Act Claim

 Defendant contends that Plaintiffs' claim under the Michigan Brokers, Lenders and Servicers Licensing Act ("MBLSLA") should be dismissed because Defendant is exempt from the Act. I suggest that Defendant is correct. Michigan law provides that the MBLSLA does not apply to a "depository financial institution whether or not the depository financial institution is acting in the capacity of a trustee or fiduciary." Mich. Comp. Laws § 445.1675(a). In turn, a depository financial institution is defined as "a state or nationally chartered bank, a state or federally chartered savings and loan association, savings bank or credit union, or an entity of the federally chartered farm credit system." Mich. Comp. Laws § 445.1651a(f). Plaintiffs' complaint recognizes that Defendant is a "national banking association" and Defendant confirms that it is a "national bank chartered under the National Bank Act." (Doc. 1 at 21; Doc. 3 at 21.) Consequently, Defendant is exempt from any liability under the MBLSLA and I suggest that Defendant's motion to dismiss should be granted. *See also Soto*, 2012 WL 113534 at *4 (dismissing MBLSLA count because Wells Fargo is chartered under the National Bank Act and is therefore exempt).

### 8. Fair Debt Collection Practices Act Claim

Defendant argues that Plaintiffs' claim under the FDCPA should be dismissed because Defendant is not a debt collector since it was attempting to collect its own debt. Defendant further contends that Plaintiffs' claim under the MOC should be dismissed because Defendant was not engaged in debt collection. Plaintiffs respond that Defendant failed to attach a copy of the promissory note to its motion;

thus, it has not shown that it was collecting its own debt. (Doc. 6 at 19–20.) Defendant attached the relevant promissory note to its reply. (Doc. 9 at Ex. 5.)

 Federal law provides that "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another ... which was not in default at the time it was obtained by such person.

15 U.S.C. § 1692a(6). Thus, "a creditor is not a debt collector under the FDCPA ... [n]or is the assignee of a debt that was not in default at the time it was assigned." *Joyner v. MERS*, 451 Fed.Appx. 505, 507 (6th Cir.2011) (citations omitted).[12] Moreover, the enforcement of a security interest through a nonjudicial foreclosure is not collection of a debt for purposes of the FDCPA. *Montgomery v. Huntington Bank*, 346 F.3d 693, 700–01 (6th Cir.2003). I therefore suggest that Defendant's motion to dismiss Plaintiffs' FDCPA claim should be granted.

As to the MOC claim, the MOC applies only to collection agencies. Michigan law provides that the term

"collection agency" means a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be due another.... Collection agency does not include a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency such as, but not limited to, the following: (i) A regular employee when collecting amounts for 1 employer if all collection efforts are carried on in the name of the employer; (ii) A state or nationally chartered bank when collecting its own claims[.]

Mich. Comp. Laws § 339.901. Since Defendant is a nationally chartered bank attempting to collect its own claims, i.e., mortgage debt, I suggest that Defendant is expressly exempt from the purview of the MOC and that Defendant's motion to dismiss should be granted with regard to Plaintiffs' MOC claim.

**E. Conclusion**

For the reasons stated above, I suggest that Defendant's motion to dismiss or for summary judgment should be granted as to all claims and that the case should be dismissed with prejudice in its entirety.

**III. REVIEW**

 Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed.R.Civ.P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard*

---

**12.** I note that at the time of the first assignment to Defendant, July 12, 2006, the mortgage loan was not in default. Although it is unclear exactly when Plaintiffs defaulted, Plaintiffs began making payments under the plan—whether it was a TPP, trial period, or forbearance plan—in June 2010 (Doc. 1 at 24), and the notice of removal indicated that Plaintiffs were "due on their mortgage loan for November 1, 2010." (Doc. 1 at 6.) Therefore, it appears that Plaintiffs were not in default until 2010, or at least several years after the assignment in July 2006.

*v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.